Argued November 14, 1946; reargued January 21; reversed
April 1, 1947

## BARKLEY et ux. *v.* GIBBS

(178 P. (2d) 918)

*Harry A. Slack,* of Coquille, for appellants.

*Claud H. Giles,* of Coos Bay, for respondent.

WINSLOW, J. (Pro tempore)

This is a suit for an injunction to restrain the respondent Gibbs from using a gateway for logging purposes. The gateway was established under the provisions of O. C. L. A. §§ 100-1501, 100-1502, 100-1503, 100-1504, 100-1505. A general demurrer to appellants' complaint was sustained. Appellants declined to plead further, and a decree dismissing the suit was entered by the trial court from which appellants prosecute this appeal.

The allegations of appellants' complaint are as follows:

"Comes now the above-named plaintiffs, and for their cause of suit against the above-named defendant, complain and allege:

"I. That plaintiffs are husband and wife; and are the owners in fee and entitled to the possession

of the Northeast Quarter of the Northeast quarter, south half of the Northeast quarter, Northeast Quarter of the southeast quarter, all in Section 19, Township 30 South, Range 12 West of the Willamette Meridian in Coos County, State of Oregon.

"II. That said defendant Donald Gibbs, is the owner of the southeast quarter of the southeast quarter of Section 19, Township 30 South, Range 12 West of the Willamette Meridian in Coos County, Oregon, and which land is immediately adjacent to the above-described premises owned by plaintiffs, and which he operates as a farm or ranch.

"III. That said defendant Donald Gibbs is also engaged in logging operations on lands which are adjacent to the hereinbefore described land owned by him, but not on his own land.

"IV. That prior to the institution of this suit, said defendant attempted to negotiate and purchase from plaintiffs, a logging right of way over and across the hereinbefore described lands owned by plaintiffs, but failing to acquire such logging right of way, he instituted a gate-way proceeding in the County Court of said County; that among other matters the petition for said gate-way alleged 'that the right to use the same for transportation of timber products has been refused him by said owners.' That thereafter and on August 23rd, 1945, said County Court made an order in said proceeding establishing a gate-way, following the course prayed for in said petition, over and across said lands owned by the plaintiffs, and allowed plaintiffs the sum of $150.00 as damage for the land used by said gate-way.

"V. That according to said petition the purpose of said gate-way was to provide a means of ingress to and egress from the farm and residence of the defendant Donald Gibbs. That since the allowance of said gate-way as aforesaid by said County Court said defendant has commenced to haul poles, ties, and other timber products over

and across said gateway, from lands other than those owned by said Gibbs, against the will and without the consent of the plaintiffs or either of them, and is continuing to wrongfully and unlawfully, and without the consent of these plaintiffs, use said gate-way for the purpose of hauling, transporting, and carrying the timber products belonging to said defendant, on and over said gate-way, and in the conducting generally of his logging operations. That said defendant has also failed at certain points to follow the course of said gate-way. That the fair and reasonable value for such use and occupation of said land used by said gate-way for logging purposes is the sum of $500.00, and the plaintiffs have been damaged thereby in said sum.

"VI. That said defendant threatens to conduct other logging operations adjacent to said premises owned by plaintiffs, and threatens to convey logging products across said gateway. That if such operations proceed, they will do plaintiffs great and irreparable injury, and will deprive them of their constitutional right of property without compensation or securities tendered.

"Wherefore, plaintiffs pray that the court presently, by preliminary injunction and hereafter, by permanent injunction restrain said defendant, his agents and employees, from using said gate-way for logging purposes without just compensation or security tendered."

The question presented is of far more importance than appears at first glance. It will be noted that respondent established the gateway across appellant's land by virtue of O. C. L. A. § 100-1503. He now seeks to log from land adjoining his land and to use this gate-way across appellants' land through which to carry on this logging operation.

The question presented is: Does he have a right to make this use of the gateway? If he does, the com-

plaint is not good. If he does not, then the complaint is good and the lower court committed error in sustaining the demurrer and in dismissing this suit.

At the very foundation of our consideration of the issue, we are confronted with the proposition as to the constitutionality of the statute. If the road is strictly a private road, the statute is unconstitutional. *Witham v. Osburn,* 4 Or. 318, 18 Am. Rep. 287; *Towns v. Klamath County,* 33 Or. 225, 53 P. 604; *Anderson v. Smith-Powers Logging Co.,* 71 Or. 276, 139 P. 736, L. R. A. 1916B, 1089; 29 C. J. S. 831; *Komposh v. Powers,* 75 Mont. 493, 244 P. 298; *Powers v. Komposh,* 275 U. S. 504, 72 L. Ed. 396, 48 S. Ct. 156. On the other hand, if the road is a public road with all the attributes of a highway, then it follows that respondent's neighbor can use it for logging his timber. The county court can regulate load limits, O. C. L. A. § 115-389, and otherwise control and regulate respondent's gateway, O. C. L. A. §§ 100-3002 and 115-387. Our task is to ascertain if possible the legislative intent expressed in the statute involved.

Consideration of the history of this section of the statute, the several amendments that have been made thereto, and the decisions of this court construing the same are of great assistance in solving this problem.

The first act passed by the Oregon Legislature covering this matter was enacted in 1860. It provided for a strictly private road. The constitutionality of that act came before this court in 1873. In the case of *Witham v. Osburn,* supra, this court held the act unconstitutional. At page 324 of the opinion, this court said:

 "It has been argued that many persons are so situated as to have no connection with any public

highway, and that such persons will be put to great inconvenience, unless private roads can be established for the use and benefit of such persons. In answer to this argument, we would suggest that the Legislature may meet the necessity by providing for the establishment of a different class of public roads than are now provided for by law." *Witham v. Osburn,* supra.

In 1876 the Legislature followed this suggestion. This act provided that where a person's residence was not reached by any kind of road and where it was necessary that the public have ingress to and egress from the residence of such person, a county road or public highway could be thus established. This statute came before this court in the case of *County of Douglas v. Clark,* 15 Or. 3, 13 P. 511 (1887). While the constitutionality of this act was not urged, the court did state that the authority sought to be exercised was entirely of a public nature. The court said:

"Such roads can only be established when it is necessary that the public and the applicant have ingress and egress from the residence of the applicant * * *." *County of Douglas v. Clark,* supra.

This act was again before this court in the case of *Towns v. Klamath County,* supra. In this case the constitutionality of the act was directly in issue and was sustained. The court said on page 232 of the opinion:

"The principle to be deduced from the adjudged cases, bearing upon the question, seems to be that if, by a fair construction and operation of the statutes, the road, when laid out, is in fact a public road, for the use of all who may desire to use it, the law is not liable to the charge of unconstitutionality, and is valid, though the road may be laid out on the application of, paid for and kept in repair by the petitioner, and primarily designed

for his benefit; but if such road is to become a mere private way, and not open to the public, the law sanctioning it is void." *Towns v. Klamath County,* supra.

In 1899 the Legislature amended the section. This act provided, among other things, as follows:

"Whenever it shall appear to the county court of any county of this state by the sworn petition of any person that the residence of such person is not reached by any convenient public road heretofore provided for by law, and that it is necessary that the public and such person shall have ingress and egress from the residence of such person, the county court shall thereupon appoint three (3) disinterested freeholders of the county as viewers, and cause an order to be issued directing them to meet at a time therein specified (not less than ten days from the making of such order) and view out and locate a county road thirty (30) feet in width, or a gateway not less than ten nor more than thirty feet in width, from the residence of such person to some other public road, steamboat landing or railroad station * * *." Oregon Laws 1899, p. 164.

It will be noted that this statute is very similar to the present Oregon statute, except that the present statute uses the term "farm or residence."

This act was before this court in *In Re Sage, Yoran v. Sage,* 54 Or. 587, 104 P. 428. The petition for the road in that case asked for "a county road and gateway, not less than 10 nor more than 30 feet wide, and the same to be 30 feet wide, from the residence and timber of your petitioners." However, neither the report of the viewers nor the final order made any reference to timber. The report did provide "that the parties praying for the road be required to only keep up gates on property lines." The order provided "that

the said roadway and gateway be, and the same is hereby established according to said report and the survey." The question of the constitutionality of the statute was not involved. The court did say at page 590 of the opinion:

> "It must be noticed that the amendment of 1899 does not provide for 'a roadway and gateway,' but for a county road 30 feet wide, or a gateway not less than 10 nor more than 30 feet wide. If a county road is petitioned for, then it must be an open road, and must be fenced, and this raises the question for the viewers to determine the damages to the owner of the land in consequence of having his farm divided by a fence, and the various elements of inconvenience arising therefrom, as well as the value of the land taken. * * * If a gateway is petitioned for, no fencing is contemplated, and the only element of damages would be the value of the land taken and the loss and inconvenience occasioned by travel over the land; the erection and maintenance of the gates being at the expense of the petitioner." *Yoran v. Sage,* supra.

In 1903 the Legislature passed what might be termed a road code, Oregon Laws 1903, page 262, including in it, as section 20 at page 269, a re-enactment of the 1899 act referred to above, and repealed the 1899 act. Then in 1907, this portion of the road code was amended. Oregon Laws 1907, chapter 136. This time the Legislature retained the word "residence" and added the words "timber land and timber," so that the expression read "the residence or timber land or timber of such person."

A construction of this statute came before this court in 1914 in the case of *Anderson v. Smith-Powers Logging Co.,* supra. Again the constitutionality of the act was raised. Pursuant to the act, Smith-Powers

Logging Co., engaged in the logging business in Coos County, had established the road under the statute of 1907, referred to above, across Anderson's land, which was designated as a public road forty feet wide. The road was established for the purpose of carrying on logging operations in which the Smith-Powers Logging Co. was interested. Immediately after acquiring the roadway it likewise applied to the county court for a franchise to build a logging railroad over such public road. The franchise was granted. The petition for the establishment of the public road provided, among other things, as follows: "Your petitioner is now engaged in logging in the immediate vicinity of said land, and is desirous of logging the same." It will be noted that here we have an attempt to establish a logging road under this act as it existed in 1907 when it used the words "timber land or timber." This court held the act unconstitutional in so far as it attempted to authorize a logging road.

The court said:

"We hold that so much of said Section 6307, L. O. L., as relates to the establishment of a county road from the timber land or timber of a person owning the same to some public road, steamboat landing, or railway station is unconstitutional because it, in effect, attempts to authorize the taking of private property for a private use." *Anderson v. Smith-Powers Logging Co.*, supra.

It is significant that the court used this additional language on page 297:

"That portion of Section 6307 that authorizes the location of a county road from a person's residence to some other county road is not affected by this decision, as that involves a different question, and its validity has been settled by previous de-

cisions of this court." *Anderson v. Smith-Powers Logging Co.*, supra.

While several other amendments were made to the statute, the next amendment of importance to our consideration here is the amendment of 1919. Oregon Laws 1919, chapter 380. By this enactment the terms ''timber land and timber'' were omitted, and the words ''farm or residence'' were used. The 1919 enactment is § 100-1501 of our present code.

Following this amendment to the statute, Section 18 of Article I of the Constitution was amended by adding thereto the following language:

''* * * provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use.''

Following this amendment to the Constitution, the Legislature in 1921 passed what are now O. C. L. A. §§ 12-201, 12-202, 12-203, 12-204, 12-205, 12-206, 12-207, outlining complete procedure for the establishment of a logging road. The validity of this procedure was before this court and sustained in *Coos Bay Logging Co. v. Barclay*, 159 Or. 272, 293, 79 P. (2d) 672.

Construing this statute in the light of these amendments and these decisions, it seems clear that the Legislature intended to make a distinction between a gateway not less than ten nor more than thirty feet wide, and the public road not exceeding sixty feet wide referred to therein. It seems clear from these amendments and decisions that the Legislature intended that the gateway therein referred to should have sufficient

attributes of a public character to meet the constitutional requirements and at the same time be much less than a public highway. It is believed the Legislature did "meet the necessity by providing for the establishment of a different class of public roads than are now provided for by law." *Witham v. Osburn,* supra. It seems clear from this history of the act that it never was intended that the gateway therein referred to was to be used or substituted for a logging road; that it was the intention of the Legislature to require respondent, if he desired a logging road, to proceed under Section 12-201 and sections following.

It follows from the foregoing that the complaint states a cause of suit, and the court was, therefore, in error in sustaining the demurrer and in dismissing the suit. Accordingly, the decree is reversed and this cause remanded for such proceedings as may be taken and had not inconsistent with this opinion.

KELLY, J., did not participate in this decision.