Argued and submitted November 6, 1981, affirmed in part;
reversed in part September 8, reconsideration denied October 27,
petition for review denied December 7, 1982 (294 Or 212)

AYLETT et ux,
*Respondents,*

*v.*

MARDIS et al,
*Appellants.*

(No. 6444, CA A20205)

650 P2d 165

Rex E. H. Armstrong, Portland, argued the cause for appellants. With him on the briefs were Linda Triplett and Lindsay, Hart, Neil & Weigler, Portland.

Milo Pope, Mt. Vernon, argued the cause for respondents. With him on the brief was Kilpatricks & Pope, Mt. Vernon.

Before Richardson, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendants[1] appeal from an injunction that denied them use of a statutory way of necessity across plaintiffs' property to reach their residences; they also assert that it was error to deny their counterclaim seeking reformation of a judgment entered in a separate proceeding. Plaintiffs sought the injunction after defendants' predecessor, Braat, who had obtained the way of necessity to reach his land-locked 49.81-acre parcel, subdivided that parcel and sold 5-acre lots to defendants. Plaintiffs contended that the use of the way to reach the lots impermissibly expanded the use contemplated when the way was created. The trial court agreed and enjoined use of the way to reach the residences, permitting the way to be used only to reach any farm on the property.

In March, 1974, Braat filed a petition pursuant to ORS 376.105 *et seq* to establish a way of necessity across plaintiffs' property to gain access to his parcel.[2] The board of county viewers submitted a report to the Morrow County Court, recommending the creation of a 33-foot wide right of way and fixing the cost of the land taken, including the cost of fencing. The county court adopted the report and granted the way, except that it reduced the width to 30 feet and established the road as a "perpetual right of way."

On appeal to the circuit court the creation of the way was affirmed, but the legal description was amended. The amended judgment was affirmed in *Braat v. Aylett,* 273 Or 795, 543 P2d 1071 (1975), where the only issue was whether the undeveloped parcel constituted a farm under the statute.

---

[1] The notice of appeal names all defendants as appellants. However, the record shows that defendants Vernon Rank and Fay Rank, husband and wife, and John Winget did not appeal from the trial court's order.

[2] A statutory way of necessity differs from the way of necessity that arises by implication between a grantor and grantee and passes to the grantee as an appurtenance to the land conveyed.

"* * * [W]here a tract of land is conveyed, which is separated from the highway by other lands of the grantor or which is surrounded by his lands or by his and those of third persons, there arises by implication in favor of the grantee a way of necessity across the premises of the grantor to the highway." *Penn Mut. Life Co. v. Nelson,* 170 Or 248, 253, 132 P2d 979 (1943).

There is no necessity of a common grantor or previous unity of ownership in the establishment of a statutory way of necessity.

Subsequent to the decision in *Braat,* it was discovered that the legal description of the way did not connect the Braat property to a public road. On Braat's petition the circuit court then entered a second amended judgment to correct the description. (As pointed out later in this opinion that description was also incorrect.) In addition to amending the description, the second amended judgment also included a provision that Braat *and the public* had a perpetual right of way over plaintiffs' property. The reference to "the public" had not appeared in prior orders.

Plaintiffs appealed that judgment to the Supreme Court, which modified the order by deleting the reference to the public. *Braat v. Aylett,* 278 Or 549, 564 P2d 1030 (1977) *(Braat II).* The decree entered on the mandate deleted reference to the public and included, for the first time, a statement that the purpose of the way was to provide Braat with access to his *farm.*

In 1975, while those legal proceedings were continuing, Braat began to subdivide his land.[3] By August, 1977, the lots had all been sold, and residences were being built. In March, 1980, plaintiffs filed this action to enjoin defendants from using the way for any purpose other than to reach a farm on the property. Defendants counterclaimed to correct the legal description of the the way.

The way was established pursuant to ORS 376.105 *et seq,*[4] providing for creation of ways of necessity

"[w]henever it appears to any county court by the sworn petition of any person that the farm or residence of such person is not reached conveniently by any public road provided by law, and that it is necessary that the public and such person have ingress to and egress from the farm or residence of such person * * *." ORS 376.105.

---

[3] The subdivision was found to be an illegal subdivision in a mandamus proceeding in 1979, and a peremptory writ was issued to Morrow County requiring that it revoke all zoning approvals previously granted to defendants. Petitions which had been filed by certain of these defendants seeking establishment of a way of necessity were dismissed on the basis of the mandamus proceeding and ORS 376.180(10), enacted in 1979, which provides that a way of necessity may not be established "for land that has been subdivided or partitioned in violation of ORS Ch 92."

[4] ORS 376.105-.145 were repealed in 1979 and ORS 376.150-.200 were enacted to provide for statutory ways of necessity.

The county court was required to appoint a board of county viewers who are to

"* * * view out, locate and mark out either a suitable public road not exceeding 60 feet wide, or a gateway not less than 10 or more than 30 feet wide, or both, as may be found best by the viewers, having regard to all surrounding circumstances and conditions of the case and so as to do the least damage to the land through which the road or gateway is located, from the farm or residence of such person to the nearest point practicable on another public road, gateway, steamboat landing or railroad station." ORS 376.110.

The county was entitled to approve the report of the viewers and to "declare the road or gateway to be a public road or a perpetual right of way." ORS 376.115.

■ A road and a gateway are distinguished in part by size but primarily by the fact that a gateway need not be fenced, while a road requires fencing. ORS 376.110; *In re Sage. Yoran v. Sage,* 54 Or 587, 590, 104 P 428 (1909). It is not clear, however, whether or how a road differs from a perpetual right of way or a public easement as those terms are used in the statute.[5]

■ There is one clearly established characteristic of a statutory way of necessity: it must be open to the public. The first statute that provided for statutory ways of necessity was held to be unconstitutional in *Witham v. Osburn,* 4 Or 318 (1873), because it provided for a private way and permitted the taking of property for private use.

A later statute that provided for the creation of "roads of public easement" was held to be constitutional:

"* * * [I]f, by a fair construction and operation of the statutes, the road, when laid out, is in fact a public road, for the use of all who may desire to use it, the law is not liable to the charge of unconstitutionality, and is valid, though the road may be laid out on the application of, paid for and kept in repair by the petitioner, and primarily

---

[5] The statutes that provided for the creation of a statutory way of necessity use several different terms to refer to the way created. ORS 376.110 used the terms "public road" or "gateway." ORS 376.115 provided that the county may declare the road or gateway to be a "public road or a perpetual right of way." Finally, ORS 376.130 referred to "[p]ublic roads or rights of way" and "road or public easement."

designed for his benefit; but if such road is to become a mere private way, and not open to the public, the law sanctioning it is void. * * * The test is whether it is an open public way, or one for the exclusive use and benefit of the petitioner." *Towns v. Klamath County,* 33 Or 225, 232-33, 53 P 604 (1898).

In *Lesley v. Klamath County,* 44 Or 491, 494-95, 75 P 709 (1904), the court held:

   "* * * It is the intendment of the statute * * * to provide a road of public easement to and from the residence of the petitioner. This is for the benefit of the public as well as for the petitioner, and any road that does not afford this privilege is without the purview of the law."

   The trial court here treated the way as a private easement appurtenant to the Braat property. It read *Braat II, supra,* as modifying the judgment of the circuit court "to provide for a perpetual right of way instead of also allowing public access as provided by the trial court."

■   Although the court in *Bratt II* modified the judgment to remove the reference to use by the public and characterized the way as an easement appurtenant to the Braat property, it is clear from the case law that a statutory way of necessity permitted by ORS 376.105 *et seq must* be open to the public. Public use of the road did not depend on the mention of a public use in the circuit court order. A statutory way must be a "public easement" rather than a private easement. *See Towns v. Klamath County, supra; Lesley v. Klamath County, supra; Ray v. Davis,* 249 Or 1, 436 P2d 741 (1968); *see also Anderson v. Smith-Powers Logging Co.,* 71 Or 276, 139 P 736 (1914).[6]

---

[6] The basis of plaintiffs' appeal in *Braat II* was a contention that if public access were granted, it would amount to a taking without just compensation. We do not see the substance to that contention, because plaintiffs *were* compensated. The county court ordered the payment of compensation and specified the amount of damages when the way was created. The Supreme Court indicated that it was not required to reach the constitutional issue because plaintiffs had indicated they would be satisfied with the deletion of the reference to use by the public. Braat, who represented himself in that appeal, indicated that his concern was that the way would not terminate on his death or on a sale of the property. The court described the way as an "easement of perpetual use * * * which is appurtenant to the land: a 'burden upon the land of one for the benefit of another.'" 278 Or at 552. As indicated above, however, the statute which provided for creation of a way of necessity is constitutional only if the way is open to the public, rather than to only the one seeking it.

■ Plaintiffs suggest that it was their prerogative to decide whether they wanted the way to be a public road or a perpetual right of way, implying that a perpetual right of way is a private easement. They have no such prerogative. The county's authority pursuant to the statute was to create a public way. Whether termed a public road or a perpetual right of way, the way must be open to public use.

The judgment here granted a perpetual right of way. We construe that judgment, made pursuant to ORS 376.105 *et seq* as complying with the statute and its constitutional requirement that the way be open to the public. *See Ray v. Davis, supra.* The deletion of the reference to use by the public by the Supreme Court in *Bratt II, supra,* did not change the nature of the way granted pursuant to the statute.

It is the character of that public use that is at issue here. *Barkley et ux v. Gibbs,* 180 Or 647, 178 P2d 918 (1947), indicates that there is a difference between the use allowed on a "public road" and that allowed on a "gateway." In that case the respondent wanted to use a gateway as a logging road. The court concluded:

> "It seems clear * * * that the Legislature intended that the gateway * * * should have sufficient attributes of a public character to meet the constitutional requirements and at the same time be much less than a public highway. It is believed the Legislature did 'meet the necessity by providing for the establishment of a different class of public roads than are now provided for by law.' *Witham v. Osburn, supra.* It seems clear from this history of the act that it never was intended that the gateway therein referred to was to be used or substituted for a logging road; that it was the intention of the Legislature to require respondent, if he desired a logging road, to proceed under [statutory procedures provided for the establishment of a logging road.]" 180 Or at 655-56.

*See also* 25 Op Att'y Gen 334 (Or 1950-52).

■ The county court order establishing the way at issue here ordered payment of costs of fencing. Under *In re Sage. Yoran v. Sage, supra,* cost of fencing may be awarded only when a road, rather than a gateway, is established. Therefore, it is apparent that the trial court did not intend

a gateway. However, the county designated this way a "perpetual right of way" rather than a public road. As we have indicated, the distinction between those terms in this context is not apparent. We do not believe that either designation may be restricted in the manner in which the trial court restricted the use of this way in granting the injunction.

In deciding whether a gateway could be used as a logging road, the court in *Barkley et ux v. Gibbs, supra,* stated:

> "* * * If the road is strictly a private road, the statute is unconstitutional. * * * On the other hand, if the road is a public road with all the attributes of a highway, then it follows that respondent's neighbor can use it for logging his timber. * * *" 180 Or at 650.

We need not decide whether this way can be used for any and all purposes. The statute specifies that a way of necessity may be obtained to gain access to a farm or residence. Although the land which now belongs to defendants was undeveloped farm land when the way was obtained, it is now being used for residences, a use within the contemplation of the statute.

In addition, the statutory scheme contains the implicit possibility that the use of a way be expanded by connection with another way created under the same provisions. ORS 376.110(2) provided for the county viewers to mark out a way

> "from the farm or residence of [the petitioner] to the nearest point practicable *on another public road, gateway,* steamboat landing or railroad station." (Emphasis supplied.)

Therefore, we conclude that the use of the way to reach a farm or residences on the property is allowed under the statute.[7] It follows then that it was error to enjoin defendants from using the way to reach their residences.

---

[7] ORS 376.175 now requires that the order granting a way of necessity "[d]escribe those uses that are permitted on any way of necessity established * * *," and ORS 376.180(5) requires that a way of necessity established pursuant to statute

> "Not be subject to any use that is not described in the order establishing the way * * *."

We next consider defendants' counterclaim to correct the legal description of the way.[8] They characterize the counterclaim as one for reformation of the judgment entered on the mandate in *Bratt II* in August, 1977. Defendants argue that the circuit court has "the inherent power * * * to correct the judgment * * * in order to give defendants the complete right of way sought by Braat." In support of that contention they rely on *Hein v. Thiel*, 274 Or 715, 724, 549 P2d 514 (1976), and *Harder v. Harder*, 26 Or App 337, 344, 552 P2d 852 (1976).

When Bratt petitioned the county court to establish the way, he sought access from his land to a public road, "approximately one-half mile distant, over and across real property owned by [plaintiffs]." The road viewers recommended, *inter alia,* to the county court a "3/4 mile right-of-way * * *." The county court, by order dated November 6, 1974, accepted the recommendation but reduced the width of the way. Up to that point, neither Braat's petition, the report of the viewers nor the order included a legal description of the way, except that it was located in section 21, T 4N, R 27, E W.M. Plaintiffs appealed from the order to the circuit court and a judgment was entered, dated April 23, 1975, affirming the creation of the way. The judgment described the way by metes and bounds and as being "2,497.5 feet to an existing fence running south and also the west end of an existing improved road the terminus point of this description, * * *."[9] Plaintiffs then submitted

There were no such statutory provisions at the time that the way at issue here was established.

[8] We understand that the way, as presently described, is located entirely within the southwest quarter of Section 21, T 4 N, R 27 E.W.M., Morrow County, and is roughly one-half mile long. The north line of the right of way is the south line of the Union Pacific Railroad right of way. To connect the east end of the way to a public road would require that the way be extended to the east a distance of approximately 1,000 feet through land of plaintiffs in the southeast quarter of Section 21. The record is not so clear concerning the west end of the way. It appears that due to a "jog" in the south line of the railroad right of way the west end of the way does not connect with defendants' property. Accordingly, the way as described is "short" at both ends.

[9] The described length of 2,497.5 feet corresponds with a road approximately one-half mile long for which Bratt petitioned. Further, the legal description in the judgment is identical with a description prepared by Braat's surveyor on February 24, 1975.

to the circuit court an amended version of the judgment with a different description. The amended judgment was entered in May, 1975.[10] Sometime later, Braat and plaintiffs disagreed over the description of the way. It appears that plaintiffs contended that the westerly end of the way did not connect with Braat's land. Braat moved the circuit court to modify the amended judgment further to correct the beginning point of the description, and a second amended judgment was entered in July, 1976. That modification was presumably intended to allow for the "jog" in the way and to result in connecting the west end of the way with Braat's land. Even with this change, a "gap"[11] continued between the end of the way and Braat's land.[12]

All of the judgments describe the way as being 2,497.5 feet in length. Bratt never petitioned the circuit court to change the length. Among the trial exhibits is a hand-written legal description dated May 3, 1976, prepared by Bratt's surveyor.[13] That description adds 1,184.7 feet to the easterly end of the way. The additional distance is, we understand, necessary to connect the easterly end of the way to a public road.[14]

As we stated earlier, Braat began to subdivide his land in 1975, selling parcels to certain of these defendants and their predecessors. Beginning in 1975, some of these defendants filed petitions with the county court to establish

---

[10] Plaintiffs appealed from that judgment. *See Braat v. Aylett, supra,* 273 Or 795. No issue concerning the legal description of the way was involved in that appeal.

[11] The gap between Braat's land and the end of the way was not a "clerical error." The judgment entered conformed to the proof and the judgment actually rendered. *Hubbard v. Hubbard,* 213 Or 482, 487, 324 P2d 469 (1958); *Bogh v. Bogh,* 185 Or 93, 103, 202 P2d 503 (1949); *see also* ORCP 71A.

[12] Plaintiffs appealed from the second amended judgment. *Braat II,* 278 Or at 551. The incomplete description was not an issue.

[13] This was the second legal description prepared by Braat's surveyor. *See* n 9, *supra.*

[14] When Braat moved the circuit court to change the beginning portion of the description, he did not seek to increase the length of the way, although his surveyor's second description was dated prior to the date of the second amended judgment. No explanation has been provided for Bratt's inaction in that respect. In this action, Braat testified that the nearest road to his property was "2,500 and some feet from it across [plaintiff's land]," which corresponds with the distance of 2,497.5 feet used in the descriptions in the judgments. Braat petitioned for a way approximately one-half mile in length and that is what he acquired.

a way across plaintiff's land to serve the parcels purchased. Later, a "consolidated petition" for a way, which superseded the separate petitions, was filed with the county court. The county court, by an order dated October 24, 1979, dismissed the consolidated petition at the conclusion of the mandamus proceeding. *See* n 3, *supra.* Defendants did not appeal from the order of dismissal but waited until plaintiffs brought this action for an injunction to assert their counterclaim for reformation of the judgment.

Under former ORS 18.160, a *party* may be relieved from a judgment entered as a result of mistake, inadvertence, surprise or excusable neglect.[15] In addition to this statutory authority, our case law has established that a court has the inherent power to modify or set aside a judgment, provided the court acts within a reasonable time after entry of the judgment.[16] *Braat v. Andrews,* 266 Or 537, 540, 514 P2d 540 (1973); *Bailey v. Steele,* 263 Or 399, 401, 502 P2d 586 (1972); *Morphet v. Morphet,* 263 Or 311, 317, 502 P2d 255 (1972). The question of what is a reasonable time is ordinarily a matter within the discretion of the court. *Morphet v. Morphet, supra,* 263 Or at 317. "Whether or not there has been an abuse of discretion depends upon all of the facts of the case." *Miller v. Miller,* 228 Or 301, 305, 365 P2d 86 (1961).

In all of the cases cited, the party who sought to invoke the inherent power of the trial court was a party or representative of a party in the action or proceeding that culminated in the judgment sought to be opened, modified or vacated. Here, defendants, although Braat's successors in interest, are all strangers to the action in which the *Braat* judgment now sought to be modified was entered. Braat is not a party to the present action. When the trial judge declined to change the legal description in the *Braat II* judgment, he concluded that the attempt to correct the legal description came too late. We understand that to mean that defendants did not seek to modify the judgment within a reasonable time.[17]

---

[15] *See also* ORCP 71B.

[16] *See also* ORCP 71C.

[17] The trial court stated:

Defendants urge us to remand to the circuit court with instructions to change the legal description of the way in the judgment entered in *Braat II*. Plaintiffs characterize the counterclaim as nothing more than a belated attempt to establish a way by modifying the judgment. The issue is whether the trial court abused its discretion when it determined, as a matter of law, that the claim was not brought within a reasonable time.

■ Defendants or their predecessors knew as early as 1975 that the description of the way was incomplete. Petitions were filed with the county clerk to establish a way.[18] When the consolidated petition was dismissed by the county court in 1979, no appeal was taken. In view of all the circumstances, the trial court did not abuse its discretion when it ruled that the counterclaim to modify the judgment was not brought within a reasonable time from the entry of the judgment in *Braat II*. Moreover, the relief granted by the final judgment in *Braat II* was responsive to and in conformity with Braat's petition and his proof. "It is elementary law that the relief granted [by a judgment or a decree] must be responsive to and in conformity with the pleadings and proof." *Hein v. Thiel, supra,* 274 Or at 724.

The injunction prohibiting defendants' use of the statutory way of necessity is reversed; the judgment is affirmed in all other respects.

---

"Beginning as early as June 1975 * * * [defendants] were aware of their access problems but apparently continued to develop anyway. * * * They were advised of * * * these proceedings * * * yet for some reason they chose not to intervene or participate.

"* * * * *

"The corrections to the legal description come too late. This should have been raised by Mr. Braat in the original matter."

We do not understand that the trial court ruled that it was without jurisdiction to consider the counterclaim. If that was the ruling, it would be irrelevant whether the relief was sought within a reasonable time.

[18] We cannot determine with any positive assurance whether the earliest petition to establish a way was filed before or after the decision in 1975 in *Braat v. Aylett, supra.* It is clear, however, that some petitions were filed before the 1977 decision in *Braat II*.