Argued and submitted May 4, affirmed December 19, 1984, reconsideration denied
February 8, petition for review denied February 26, 1985 (298 Or 773)

In the Matter of the Application of
Marjorie Witten, Walter L. Shrofe,
Betty J. Shrofe, William T. Smith
and Jack Carl for a Way of Necessity.

WITTEN et al,
*Respondents,*

*v.*

MURPHY et ux,
*Appellants.*

(8589; CA A27786)

692 P2d 715

Milo Pope, Mt. Vernon, argued the cause for appellants. With him on the briefs was Kilpatricks & Pope, Mt. Vernon.

Hugh K. Cole, Jr., Eugene, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Young and Rossman, Judges.

YOUNG, J.

## YOUNG, J.

This is a proceeding to establish a statutory way of necessity. ORS 376.150-376.200. The county court granted petitioners a way across defendants' land.[1] The Circuit Court affirmed, ORS 376.175(4), and defendants appeal. The question is whether petitioners have carried their burden to show that they have no "existing enforceable access to a public road," 376.180(8), and that they could not "acquire an easement for access to a public road through other legal action." ORS 376.180 (9). We review *de novo,* ORS 5.120(2) and ORS 19.125(3), and affirm.

Petitioners and defendants separately own several acres of adjoining hay and grazing land near Monument in Grant County. The lands are south of the John Day River and lie between county road 37 on the west and a state highway, referred to as the Long Creek-Monument Highway, on the east. Only defendants' land abuts county road 37, and is (or was) crossed by a dirt road, which begins at the county road and goes easterly to the east line of defendants' land. The road then runs northeasterly across lands owned by petitioners Smith, Witten and the Shrofes, then crosses land owned by the Potters and continues onto land owned by McPherson, where it connects with the state highway. The Potters and McPherson are not parties. The diagram on page 518 shows the location of the road, the ownership of the land and the way of necessity.

Originally, defendants owned all the subject land lying between the county road and the state highway, except the land owned by McPherson. They sold part of their land to Terry, who then sold to the Potters. Potters in turn sold to petitioners Smith, Witten and the Shrofes. The Potters, in connection with their sale to Smith, executed a "notice of road use" that gave Smith the right to use the road through Potter's land. Smith divided his land and sold part of it to Carl.[2]

In 1981, defendants closed the road on their land,

---

[1] The county court order establishing the way states that the "uses for such a way shall be normal entrance and egress necessary and incidental to private homes." The way crosses defendants' land and is 30 feet wide, apparently 635.48 feet long, and contains about 0.44 acres.

[2] The foregoing "chain of title" is an abbreviated summary sufficient for the purposes of this opinion.

which prevented access to the county road. Petitioners (except Carl) and the Potters commenced a declaratory judgment action against defendants seeking a declaration that the road on defendants' land and the road on petitioners' and on the Potters' lands are public roads.[3] Alternatively, they claimed that they had acquired a prescriptive easement. After defendants answered the complaint, the parties stipulated to a judgment of dismissal with prejudice. The record does not explain why the action was voluntarily dismissed. After the action was dismissed, the Potters obtained a private easement over the road through McPherson's land for access to the state highway.

The Potters and McPherson have never prevented petitioners from using the road across the Potter and McPherson lands to reach the highway. However, due to the terrain, weather conditions and the occasional flooding of Cottonwood Creek, the road across the McPherson land is not usable by motor vehicles during every time of the year. The parties stipulated that "petitioners have no legal access of record across any other properties in the vicinity that would provide access to their respective properties." Petitioners Witten and Mrs. Shrofe testified that they had no written agreement with McPherson for an easement through his land, and the parties stipulated that Carl's testimony would be the same.

A statutory way of necessity[4] is defined as "a road established under ORS 376.150 to 376.200 to provide motor vehicle access from a public road to land that would otherwise have no motor vehicle access." ORS 376.150(2). Certain conditions must exist before a way can be established. ORS 376.180 enumerates the conditions and provides in part:

"A way of necessity established under ORS 376.150 to 376.200 shall:

"* * * * *

"(8)   Not be established if the property for which the way

---

[3] The allegations of the complaint for declaratory relief can be construed to include a claim to a road through McPherson's land, although McPherson was not a party in that action.

[4] The 1979 legislature repealed and replaced the former statutes governing statutory ways of necessity. Or Laws 1979, ch 862. This case is governed by statutes enacted in 1979.

of necessity is sought has an existing enforceable access to a public road;

"(9)  Not be established if the petitioner for the way of necessity could acquire an easement for access to a public road through other legal action * * *."

Defendants assign as error the trial court's findings that petitioners met the requirements of ORS 376.180(8) and (9).[5] Defendants' argument is that petitioners failed to show by a preponderance of the evidence that they have satisfied either subsection.

Before we can begin to determine whether there is substantial evidence to satisfy subsection (8) and (9), we must first determine what those two subsections mean. Without that knowledge, we cannot review this record for substantial evidence.

The task of statutory interpretation is not easy. Subsection (8) speaks of "an existing enforceable access to a public road"; subsection (9) of "an easement for access to a public road [that could be acquired] through other legal action." Because any "easement for access to a public road" under subsection (9) would be, by definition, "an existing enforceable access to a public road" under subsection (8), the latter subsection could be read as swallowed up by the former. We assume the legislature intended something different by each subsection.[6]

■   We turn to ORS 378.180(8) and its critical phrase, "existing enforceable access to a public road." "Access" has

---

[5] The trial court's factual findings are set forth in a memorandum opinion:

"[T]here are several issues in dispute:

"1. Whether the property has an existing enforceable access to a public road (ORS 376.180(8)). I find that it does not.

"2. Whether petitioners could acquire an easement for access to a public road through other legal action. ORS 376.180(9). On this point Murphys urge that petitioners could establish an easement by implication or by prescription over the road running easterly from their properties. I find that the petitioners could not successfully obtain an easement through other legal action."

[6] Or Laws 1979, ch 862, made substantial procedural and substantive changes. We find nothing in the legislative history to assist us in distinguishing subsections (8) and (9), or in determining what the legislature intended by those sections. *See* Minutes, Senate Local Government Committee, April 15, May 15, May 28, May 31 and June 5, 1979, and Minutes House Intergovernmental Affairs Committee, June 25, 1979.

been construed narrowly as referring to the common law right of access to a "conventional road or highway" from land that *abuts* the highway. *Douglas County v. Briggs,* 34 Or App 409, 413, 578 P2d 1261 (1978), *aff'd* 286 Or 151, 156, 593 P2d 1115 (1979); Black's Law Dictionary 28 (4th ed 1968). In earlier cases the common law right of access has been called an "easement of access." *Holland et al v. Grant County et al,* 208 Or 50, 54, 298 P2d 832 (1956); *State Highway Com. v. Burk et al,* 200 Or 211, 219, 265 P2d 783 (1954); *see also* ORS 374.405 and 374.420. "In rural areas an easement of access implies a reasonable right of ingress and egress from and to the highway from the property, and not at all points along the highway." *Holland et al v. Grant County et al, supra,* 208 Or at 54.

■     When the 1979 legislature enacted ORS 378.180, it was aware of the existence of the common law right of access. Subsection (7) of ORS 378.180, although limited by its terms to the *location* of a way of necessity, provides that such a way shall "[n]ot be connected to a public road where the rights of access to the road have been acquired" by a governmental entity. Subsection (7) is followed by subsection (8), which similarly speaks of "access" to a public road. We believe that the legislature intended subsection (8) to refer to the common law right of access. Because petitioners do not own land abutting a public road, we hold that they do not have "existing enforceable access to a public road" under ORS 376.180(8).

We turn to ORS 376.180(9), which requires petitioners to show the absence of a legal right to acquire an "easement for access to a public road through other legal action." The evidence is that McPherson did not prevent petitioners from using the road through his land. Defendants agree that permissive use or a license to use the road does not defeat petitioners' right to a way of necessity. Defendants argue, however, that petitioners failed to prove that they could not acquire an easement through McPherson's land by other legal action.

■     An easement may be created by an express or implied agreement or by prescription. The evidence is that Witten, the Shrofes and Carl have no express written agreement with McPherson for an easement to cross his land.[7] If the facts

---

[7] Although Smith did not testify, once a way of necessity is established it becomes

support it, an easement may be implied over the land of a grantor when, by the transfer, the grantee's land is land-locked. *Thompson v. Schuh,* 286 Or 201, 593 P2d 1138 (1979). Because McPherson is not the common grantor of petitioners, the factual predicate to imply an easement is missing.

■ Alternatively, an easement may be acquired by pre-scription by proving adverse use for ten years. *Thompson v. Scott,* 270 Or 542, 546, 528 P2d 509 (1974); *Chambers v. Disney,* 65 Or App 684, 672 P2d 711 (1983). The evidence establishes that petitioners' use of the road across McPher-son's property was permissive, not adverse.

Petitioners have shown by a preponderance of the evidence that they could not acquire an easement through the McPherson land "for access to a public road through other legal action" under ORS 378.180(9).

Affirmed.[8]

---

a public road, and Smith would have an equal right to use it.

[8] There is no issue on appeal whether petitioners have a right to an easement through the Potter land for access to the state highway.

518

JOHN DAY RIVER

COTTONWOOD CREEK

MURPHY

McPherson

Witten

Potter

Smith

Smith

Carl

Shrofe

COUNTY ROAD 37

STATE HIGHWAY

Murphy

Witten

Smith

Shrofe

Carl

CLAIMED
WAY OF NECESSITY

-2-