Argued and submitted May 12, in Pendleton, Oregon, resubmitted In Banc December 6, 1989, reversed on cross-appeal and remanded with instructions; appeal dismissed as moot January 17, reconsideration denied April 18, petition for review denied June 5, 1990 (310 Or 121)

In the Matter of the Application of
Victor Pike and Zola Pike, husband and wife,
for Way of Necessity.

**PIKE,**
*Petitioner - Appellant - Cross-Respondent,*
*and*

**PIKE,**
*Petitioner - Cross-Respondent,*
*v.*

**WYLLIE et al,**
*Objectors - Respondents - Cross-Appellants.*

(87-12-0515CV; CA A49488)

785 P2d 764

Allen L. Johnson, Eugene, argued the cause for appellant -

cross-respondents. With him on the briefs was Johnson & Kloos, Eugene.

David B. Hydes, John Day, argued the cause and filed the brief for respondents - cross-appellants.

BUTTLER, J.

Rossman, J., dissenting.

## BUTTLER, J.

Petitioners filed a petition for a statutory way of necessity over a road that runs across objectors' land. ORS 376.150 to 376.200. The county court denied the petition. The circuit court reviewed *de novo* and granted the petition. However, it restricted the use of the way to the historical use by petitioners and expressly excluded use by anyone who might obtain any of petitioners' property through partition or subdivision. It also ordered that the width of the way be the width of the existing road.[1] Petitioners appeal, arguing that, although the circuit court correctly granted the way, it imposed restrictions that are not authorized by statute. Objectors cross-appeal, contending that petitioners are not entitled to a statutory way of necessity, because they have an existing easement. We review *de novo*,[2] ORS 19.125(3), *Witten v. Murphy,* 71 Or App 511, 513, 692 P2d 715 (1984), *rev den* 298 Or 773 (1985), and, because we agree with objectors and the

---

[1] The judgment granting the way of necessity provides, in pertinent part:

*"CONCLUSIONS OF LAW*

"* * * * *

"Petitioners should not be able to expand their use of the proposed way of necessity from the current single family dwelling to any future partition of their property.

"* * * * *

"NOW, THEREFORE, based on the above Findings of Fact and Conclusions of Law and, further, based on the testimony and exhibits that have been presented to the Court it is hereby ORDERED and ADJUDGED as follows:

"1. The proposed way of necessity * * * is granted. This way of necessity is limited to the current amount of use of the property and is not to be expanded to any additional use by other users who should obtain any property from Petitioners through a partition or other subdivision of the real property.

"* * * * *

"3. The width of the way of necessity shall be the width of the existing road.

"4. Petitioners [sic] use is limited to normal uses for farming and family use for ingress and egress to and from the property described in Petitioners' Petition."

[2] Petitioners mistakenly cite ORS 5.120 as the basis for our jurisdiction in this case. As did *former* ORS 376.120 (*repealed by* Or Laws 1979, ch 862, § 12), ORS 376.175(5) permits an appeal from an order of the county court to the circuit court. Thus, we have jurisdiction over such cases under ORS 19.010, which makes circuit court judgments appealable.

In 1979, the legislature enacted ORS 376.200 to give county governing boards the option of transferring their jurisdiction over the establishment of ways of necessity to circuit courts. Under ORS 376.200(3), if that occurs, decisions of the circuit court may be appealed to the Court of Appeals. Because, under ORS 19.010, an appeal lies from the judgment of the circuit court in any event, ORS 376.200(3) is surplusage.

county court, we reverse on the cross-appeal, rendering the appeal moot.

Petitioners own land on the north bank of the John Day River in Grant County. Objectors own land to the east of that of petitioners on the south bank between the river and Highway 26. Petitioners seek a way of necessity over a road known as John Day Lane that runs along the west border of objectors' land from Highway 26 to a bridge that crosses the river to the southeast corner of petitioners' land. That bridge was constructed in 1938 under an agreement between petitioners' predecessors in interest and objectors' predecessors in interest. When petitioners bought their property in 1979, they believed that they could use the 1938 bridge under that agreement, and they did so until 1984.

Before petitioners purchased the land, it was under common ownership with the land across the river immediately to the south that is now owned by Matuna.[3] When they purchased, petitioners acquired an easement approximately one-half mile long across Matuna's land, west of the proposed way of necessity, to State Highway 26. The bridge that had permitted crossing the river from the easement across Matuna's land to petitioners' land, however, had washed out in 1974. Although petitioners had planned originally to replace the bridge and had bought material to do it, they have not. In 1980, the width of the river at the site of the collapsed bridge was about 48 feet. At the time of trial, it had widened to about

---

[3] Matuna is not a party. This diagram shows the ownership of the land and the location of the proposed way of necessity:

105 feet. There is a divergence of opinion as to the cost of replacing the bridge: Petitioners' expert testified that it would cost about $106,000, and objectors' expert said that it would cost about $23,500.

In 1984, petitioners sought to partition their land. The partition was approved, subject to proof of legal access to the property. Shortly thereafter, petitioners were notified by objectors that they no longer had permission to use objectors' road and the 1938 bridge. Petitioners then sought a declaratory judgment entitling them to do so under the 1938 agreement. The circuit court found that the road was not "an approach" within the meaning of that agreement and denied relief. We affirmed without opinion. *Pike v. Wyllie,* 85 Or App 555, 736 P2d 1030, *rev den* 304 Or 55 (1987). Petitioners then initiated this proceeding to establish a statutory way of necessity. Because the 1979 legislature completely revised the statutory scheme providing for ways of necessity, we address the cross-appeal first to determine whether petitioners are entitled to a way of necessity under the new law.

Before the 1979 revision of the ways of necessity law, *former* ORS 376.105 provided, in part:

> "Whenever it appears to any county court by the sworn petition of any person that the farm or residence of such person is not reached *conveniently* by any public road provided by law, and that it is necessary that the public and such person have ingress to and egress from the farm or residence of such person, the county court shall: * * *." (Emphasis supplied.)

The statute went on to set out the procedure for initiating the process by which a way of necessity could be obtained.[4]

In 1979, SB 769 was proposed to amend certain provisions and to repeal others relating to ways of necessity. Section 1 of that bill originally provided:

> "If the farm or residence of any person is not reached *conveniently* by any public road provided by law and it is necessary that the public and the person have access to the

---

[4] In all, there were eight statutory provisions relating to ways of necessity:

ORS 376.105, ORS 376.110, ORS 376.115, ORS 376.120, ORS 376.125, ORS 376.130, ORS 376.135 and ORS 376.145, all of which, ultimately, were *repealed by* Or Laws 1979, ch 862, § 12.

farm or residence, the person may file a sworn petition in the circuit court of the county in which the farm or residence is located." (Emphasis supplied.)

In testimony before the Senate Local Government Committee, Jack Sollis, of the Oregon Department of Transportation, pointed out some problems with the bill, including section 1 quoted above:

"The provisions of Section 1 on line 5 'if the farm or residence of any person is not reached *conveniently* by any public road provided by law' the term 'conveniently' is very ambiguous and capable of being construed in a very broad way by the courts. 'Conveniently' could mean that it would merely cost more to build a road through property owned by the individual requesting the way of necessity over his own land, but it would be more convenient to build it across somebody elses land because it is cheaper. 'Conveniently' could also be construed by the courts as meaning that it would be not only less costly, but more convenient to build a road a half of a mile over other property rather than a road a mile long over the individual's property that would be more circuitous." (Emphasis in original.)

The witness suggested implicitly that the concept of convenience be eliminated and that the entire law on ways of necessity be rewritten, rather than changed by amendment of the existing statutes. Eventually, those suggestions, as well as almost all of that witness' suggestions, were accepted.

The original bill also provided that, "if the court is satisfied that establishment of access is *just,* the court shall declare the road or gateway to be a public road * * *." (Emphasis supplied.) That provision was also eliminated. As enacted, the new law, ORS 376.155, requires that, to establish a way of necessity, a landowner must file a petition with the governing body of the county in which the land is located that must contain:

"(2)    * * * all of the following information:

"* * * * *

"(j)    Evidence that the petitioner does not have an existing easement or right to an easement to provide access to a public road." ORS 376.155.

To emphasize those requirements, ORS 376.180 provides:

"A way of necessity established under ORS 376.150 to 376.200 shall:

"* * * * *

"(8)   Not be established if the property for which the way of necessity is sought has an existing enforceable access to a public road;

"(9)   Not be established if the petitioner for the way of necessity could acquire an easement for access to a public road through other legal action[.]"

The new statutory requirement could not be more clear: One is not entitled to a way of necessity if he has "an existing enforceable access to a public road." That is, if the petitioners have a *legally enforceable* easement for access to a public road, they may not obtain a way of necessity. As petitioners recognize, they *do* have an enforceable easement over the property of their grantors that gives them access to a public road. They contend, however, as does the dissent, that the problem is that it does not provide them *reasonable* access to a public road. Nowhere in the 1979 statutory scheme is there a reference to "reasonable" access. It is no longer sufficient that the petitioner not have "convenient" access or that the court finds that it would be "just" to establish a way of necessity. For this court to import either of those limitations into the disqualification when the person has an enforceable easement is to undo what the legislature did in 1979 when it eliminated the concept of "convenient" or "just" access to a public road. The legislature could have completely eliminated statutory ways of necessity, as one witness suggested. It did not do that, but it narrowed substantially the circumstances in which a way of necessity may be obtained.

Petitioners' enforceable easement exists, notwithstanding the fact that it is in a state of disrepair. The fact that it will cost petitioners more money to replace the bridge on the easement does not detract from the fact that they have a legally enforceable easement[5] that gives them access to a public road. For that reason, the statute forbids the granting of a

---

[5] It is not necessary to decide whether petitioners also could acquire an easement for access to a public road through other legal action, ORS 376.180(9), although it is probable that they could establish an implied easement for access from their grantor if, as they appear to claim, the express easement that they obtained has failed in its purpose. *See Thompson v. Schuh,* 286 Or 201, 593 P2d 1138 (1979).

way of necessity. None of the authorities cited by petitioners disposes of this question under the present, substantially more restrictive statutory scheme.

*Witten v. Murphy, supra,* presented the converse of this case. There, we recognized that, if the petitioners had had either an enforceable easement or had the right to acquire an easement, they could not obtain a way of necessity under the 1979 statutory scheme. The issue was whether they had either. We held that they did not have an enforceable easement or access, because they did not own land abutting a public road,[6] and that they could not acquire an easement for access through other legal action, because their use of a road across the land of others had been permissive, precluding an easement by prescription, and that they could not acquire an implied easement over the land of their grantor and others, because the others' grantor was not the petitioners' grantor. *See Thompson v. Schuh, supra,* n 5. Here, petitioners concede that they have an enforceable easement for access to a public road.

Reversed on cross-appeal and remanded with instructions to enter a judgment denying petitioners' petition for a way of necessity; appeal dismissed as moot.

**ROSSMAN, J.,** dissenting.

If the majority is correct, even a landowner whose only means of access to his landlocked property runs along an easement covered by quicksand is not entitled to a way of necessity. I dissent, because the majority's unnecessarily narrow construction of ways of necessity law works in this case to defeat the basic purpose of the statute.

According to the majority, the existence of *any* enforceable access, even if it is unusable, bars an owner of landlocked land from obtaining a way of necessity. That must be true, it contends, because (1) the legislature sought to eliminate mere convenience as a justification for obtaining a way of necessity; (2) the legislature intended to eliminate "justice" as a basis for granting a way; and (3) the statute requires petitioning landowners to establish that they do not have and

---

[6] The language quoted by the majority from *Witten* was included in the court's discussion of common law rights of access.

cannot obtain an "easement for access" to a public road. 100 Or App 120, 127.

None of those reasons supports the majority's conclusion. First, the purpose of granting ways of necessity is "to provide motor vehicles *access* from a public road to land that would otherwise have no motor vehicle *access.*" ORS 376.150(2). (Emphasis supplied.) Given that purpose, it is reasonable to infer that the legislature intended "access" to mean "reasonable access." Indeed, in *Witten v. Murphy,* 71 Or App 511, 516, 692 P2d 715 (1984), *rev den* 298 Or 773 (1985) (*quoting Holland et al v. Grant County et al,* 208 Or 50, 54, 298 P2d 832 (1956)), we said that "easement of access" in ORS 376.180(8) and (9) "implies a *reasonable* right of ingress and egress from and to the highway from the property * * *." (Emphasis supplied.) Moreover, under ORS 376.160, the county governing body must direct county officials to prepare a written report that includes "[t]he *reasonableness* of the way of necessity proposed in the petition." ORS 376.160(2)(c). (Emphasis supplied.) Thus, unless an easement provides reasonable access to a public road, its existence should not bar a landowner from obtaining a way of necessity.

The majority is also mistaken in its assertion that the legislature intended to remove what is "just" as a basis for granting a way. In testimony before the Senate Local Government Committee, Jack Sollis, of the Department of Transportation, stated:

"I would like to call your attention now to the provisions in subsection 3 of ORS 376.115 which provides that 'if the court is satisfied that the establishment of the access is just, the court shall declare the road or gateway to be a public road or perpetual right of way and shall issue and cause to be recorded an order establishing a road or right of way after the petitioner pays:' *There is no requirement that the court make a determination as to just compensation for the land taken. Again I believe that this poses a serious constitutional question.*" (Emphasis supplied.)

That testimony indicates that the legislature eliminated the language in question because of its concern with just compensation, *not* because of a desire to eliminate the concept of what is "just" as a basis for obtaining a way.

Clearly, the legislature disapproved of granting a way

of necessity for mere convenience. That cannot be equated, however, with an intent to withhold the entitlement from landowners who have a legal easement right, yet lack access to their property because the easement is unusable. To the contrary, in a memorandum presented to the Senate Local Government Committee, Mark Westling, of the University of Oregon Bureau of Governmental Research and Service, presented the committee with two alternatives: (1) abolish ways of necessity altogether, or (2) retain them as a limited type of public road used to provide access to the land of the applicant. He suggested that the second alternative was better because, among other things, "[i]t retains the right to access when such access is *necessary* and promotes the purposes for which ways of necessity were originally established." Senate Local Government Committee, April 4, 1979, exhibit D, p. 3. (Emphasis supplied.) By retaining ways of necessity, the legislature expressed a clear intent to provide access whenever necessary, *i.e.,* reasonable access.

In this case, petitioners introduced evidence to prove that using their easement would require reconstructing a bridge that would cost $106,000, more than their land is worth, and that building it would be inappropriate at any cost because of environmental factors.[1] Given those circumstances, granting them a way of necessity is not a question of their convenience, but of providing motor vehicle *access* to their otherwise landlocked property. In my view, petitioners

---

[1] Objectors' expert, Benton, owner-operator of Harney County Gypsum, testified that he could build the bridge for $23,500. However, he also testified that he does not design the bridges that he builds, but relies on engineers to design them and to "figure out all the soils type [sic] * * * the topography * * * the materials to use." He stated that he had not studied the floodplain issue before making his estimate and that he would want an engineer to design the project before he did anything.

Petitioners' expert, Anderson, is a licensed engineer. He testified:

"You shouldn't build anything at that site. It unnecessarily obstructs the floodplain. And, I guess, strictly from an engineering standpoint, if something is constructed there to obstruct the floodway, such as a bridge, it's still going to be in the way during the 100-year flood through that site."

He also stated:

"This bridge might be laying in somebody's front yard in 25 years if I designed a 25-year bridge for a 25-year flood * * *."

He presented detailed oral and written evidence analyzing applicable restraints at the site and broke down the costs of building a bridge that would withstand the 100-year flow. Given the relative qualifications of the two experts, on *de novo* review we should adopt petitioners' estimate regarding the cost of constructing an adequate bridge.

are clearly entitled to a way of necessity. Given that the circuit court properly granted them one, the issue to be resolved is whether it exceeded its authority under ORS 376.150 *et seq* by limiting usage to that necessary for petitioners' farm and family and by prohibiting use by any future owners of partitioned or subdivided portions of petitioners' land.

I would hold that it did. In *Chapman v. Perron,* 69 Or App 445, 448, 685 P2d 492 (1984), we considered whether ORS 376.150 to ORS 376.200 authorize the creation of a private road. We held that, because construing those statutes to do so would authorize a taking of property for private use in violation of Article I, section 18, of the Oregon Constitution, a way of necessity must be open to the public. 69 Or App at 449; *see also Barkley et ux. v. Gibbs,* 180 Or 647, 650, 178 P2d 918 (1947); *Towns v. Klamath County,* 33 Or 225, 232, 53 P 604 (1898); *Schoeneman v. Meyer,* 78 Or App 89, 92, 715 P2d 100, *rev den* 301 Or 165 (1986); *Aylett v. Mardis,* 59 Or App 109, 113, 650 P2d 165, *rev den* 294 Or 212 (1982).

The circuit's court's restrictions on usage violated that requirement. In *Aylett v. Mardis, supra,* an owner of a landlocked parcel obtained a statutory way of necessity across the plaintiffs' land and later subdivided, selling the resulting five-acre lots to the defendants. The plaintiffs successfully sought an injunction denying the defendants use of the way, and the defendants appealed. We reversed, holding that, because a statutory way of necessity must be open to the public and because the statute contemplated using a way for access to residences, the defendants were entitled to use it for that purpose. 59 Or App at 116. Similarly, in *Schoeneman v. Meyer, supra,* we held that, because a statutory way of necessity is a public way, the defendants whose landlocked property was served by a gateway[2] were entitled to expand its use to serve additional residences to be constructed on their subdivided property. Although *Aylett* and *Schoeneman* dealt with statutory ways of necessity established pursuant to *former* ORS 376.105 *et seq* (*repealed by* Or Laws 1979, ch 862, § 12), the reasoning in those cases also applies to the current statutory scheme. Limiting the use of a way of necessity to petitioners' personal use and restricting future use of the way

---

[2] A gateway is a statutory way of necessity that does not exceed 30 feet in width. *Schoeneman v. Meyer, supra,* 78 Or App at 91 n 2.

arising from subsequent partitions of petitioners' land would effectively make private what must be public. It follows that the circuit court erred in imposing those limitations.

Objectos point out that, unlike *former* ORS 376.105 *et seq*, the present statutes require that the order granting a way of necessity "[d]escribe those uses that are permitted on any way of necessity established[.]" ORS 376.175. Additionally, ORS 376.180 requires that a way:

"(4) Be established only for uses in connection with the property for which the way of necessity is sought;

"(5) Not be subject to any use that is not described in the order establishing the way of necessity[.]"

They argue that those provisions permit or require the type of restrictions that the circuit court imposed.

The legislative history indicates, however, that those provisions were not intended to permit such restrictions but, rather, to prevent the creation of new "public roads" that would not meet public road standards or that would permit partitioning land without compliance with subdivision or "major partitioning" regulations.[3] Partition laws in effect before the 1979 revision required review and approval of public roads only for "major partitions," defined by ORS 92.010(2) as partitions involving "the *creation* of a road or a street." (Emphasis supplied.) Thus, review and approval under ORS 92.090 could be circumvented by obtaining a statutory way of necessity to the tract to be partitioned. To avoid that result, the 1979 legislature first created a limited category of public ways to provide "motor vehicle access from a public

---

[3] As explained to the Senate Local Government Committee in a memorandum of the Bureau of Governmental Research and Service, the existing statutes (*former* ORS 376.105 *et seq*) for establishing ways of necessity created "a loophole which permits land use abuse":

"[T]he present unqualified 'right' to establish a 'public road' leaves an avenue open for the abuse and circumvention of local and state land use law. There are other procedures for establishing public roads under which the public agency can exercise appropriate discretion in protecting the public interest. These include approval of the road as part of a subdivision or major partitioning, approval of the dedication of a road right of way, and direct action of the county to purchase or condemn property for a public road." Senate Local Government Committee, April 4, 1979, exhibit D, p. 1.

road," as defined by ORS 376.150(1),[4] to an applicant's "land that would otherwise have no motor vehicle access." ORS 376.150(2). It then subjected all future partitions served by a way of necessity established under ORS 376.150 *et seq* to independent approval by the local governing body having partitioning authority. ORS 376.195.[5]

In establishing a way of necessity, a county court must describe the *public* uses that are permitted on a way, limiting them to ones connected with the landlocked property. However, it is not authorized to impose restrictions on the *future* use of the way to serve subsequent partitions of petitioners' land. Petitioners have satisfied the statutory criteria for establishing a way of necessity. Approval or disapproval of the uses to which they put their land in the future is a matter for local land use authorities.[6] ORS 376.195.

Finally, I have the distinct impression that the majority's narrow construction of Oregon's law on ways of necessity stems from its distaste for permitting private individuals to institute what amount to eminent domain proceedings. However, the legislature has decided that such actions serve important public, as well as private, purposes. It appears to me that the majority is effectively playing a legislative role. Because that is not our proper function, I respectfully dissent.

---

[4] ORS 376.150(1) defines a "public road" as

"the entire right of way of *any* road over which the public has the right of use or any right of way held by the state or a political subdivision of the state for road purposes that is not open for public use." (Emphasis supplied.)

[5] ORS 376.195 provides:

"Land for which a way of necessity is established under ORS 376.150 to 376.200 shall not be subsequently partitioned without the approval of the city or county governing body which has partitioning authority."

[6] Petitioners also argue that the trial court erred in ordering that the way of necessity be the width of the existing road, rather than 30 feet, as recommended by the county surveyor and county roadmaster. *See* ORS 376.160. The evidence supporting the trial court's determination consisted of testimony from Mr. Pike that he would pass another car on that road only once every four or five months. The trial judge also personally observed the roadway. The court's decision was based on the assumption that future use of the road would be restricted to the "current amount of use of the property." Because that assumption was in error, and because the record is insufficient to permit us to decide whether the existing width of the roadway is adequate for public use, we should remand for reconsideration of that issue and for consideration of the amount of compensation due objectors for any additional taking that results. *See* ORS 376.175(2)(f).