## Case No. 15,421.

### UNITED STATES v. HUMASON.

[6 Sawy. 199; 9 Reporter. 107: 26 Int. Rev. Rec. 12: 12 Chi. Leg. News, 138; 8 Am. Law Rec. 466.] [1]

Circuit Court. D. Oregon.  Dec. 15, 1879.

OFFICIAL AND STATUTORY BONDS—LOSS OF PUBLIC MONEY—ACT OF GOD.

1. Where an officer is required by his superior, colore officii, to give a bond, with stipulations or provisions in the condition thereof, not required by statute. the bond is void in toto.
[Cited in County of Douglass v. Clark (Or.) 13 Pac. 513.]

2. The parties to an official bond for the safe keeping or accounting for public money are not liable for the loss of the same when such loss is caused by the act of God or the public enemy.
[Cited in State v. Nevin (Nev.) 7 Pac. 655.]

3. The performance of an express contract is not excused by reason of anything accruing after the contract; but in the case of a condition in

1 [Reported by L. S. B. Sawyer. Esq., and here reprinted by permission.  9 Reporter. 107, contains only a partial report.]

a bond to do a thing, performance is excused when prevented by the law or an overruling necessity.

The action is brought against the defendant [Phœbe M. Humason], as the executrix of the will of Orlando Humason, deceased, upon two bonds executed by William Logan, in his life-time, as Indian agent for Oregon, together with said Humason and others, as sureties; the one on August 1, 1861, in the penal sum of twenty-five thousand dollars, and the other on July 1, 1862, in the sum of twenty thousand dollars; and both conditioned that said Logan would "carefully discharge the duties" of such office, and "faithfully expend all public moneys, and honestly account for the same, and for all public property which shall or may come into his hands, without fraud or delay." It is also stated in the conditions of the bonds, that Logan had been appointed Indian agent for Oregon, and had accepted the office. The case was before the court on a prior occasion, on a demurrer to the complaint, which was overruled.  See [Case No. 15,420].

Rufus Mallory. for the United States.
Seneca Smith, for defendant.

DEADY, District Judge. The breach alleged of the condition of the first bond is a failure to account for one thousand and six dollars and six cents of the public moneys received by Logan as such Indian agent, and of the second, a like failure for seven thousand six hundred and seventy-eight dollars and sixty-six cents.

The answer of the defendant, besides the denial, contains five separate pleas or defenses; the first and third being to the count upon the first bond, and the second and fourth to the count on the second one, and the fifth one to both. The plaintiff demurs to the third, fourth, and fifth pleas, because they do not constitute a defense to the action.

The third plea sets forth. in effect, that the first bond was prepared and sent to Logan by the interior department, through the then acting commissioner of Indian affairs, Charles E. Mix. who required the defendant to execute the same, with sufficient sureties, before he should be allowed to exercise the duties of said office or receive the emoluments of the same; that the conditions of said bond were wholly variant from those required by statute, and enlarged the duties and responsibilities of said Logan and his sureties; and so the said bond was extorted from said Logan by color of office. as a condition of his remaining in said office. and receiving the emoluments thereof, and is therefore void and of no effect.

The fourth plea is similar to the third.

The fifth plea states. that about July. 1862, while in the discharge of his duties as said Indian agent. under the appointment of July 1, 1862, said Logan sailed on the steamship

Brother-Jonathan from San Francisco for Portland. Oregon, with the sum of five thousand dollars, which he had received from plaintiff as said agent, with instructions to transport the same thereon to Oregon; that said steamship, while pursuing said voyage, was lost at sea, and said Logan was drowned, and said sum of money was, while being so transported, without any fault or negligence of his, lost in the Pacific Ocean.

Section 4 of the act of June 30, 1834 (4 Stat. 735), which was made applicable to Indian agents in Oregon by section 4 of the act of June 5, 1850 (9 Stat. 437), providing for the appointment of such agents, provides that Indian agents shall hold their offices for the term of four years, and "shall give bond, with two or more sureties, in the penal sum of two thousand dollars, for the faithful execution of the same.

By section 4 of the act of June 5, 1850, supra, it was declared that each Indian agent thereby provided for should "perform all the duties of agent to such tribe or tribes of Indians in the territory of Oregon as shall be assigned to him by the superintendent."

All the condition, then, which the statute required in the agent's bond, was, that he would faithfully execute his office,—perform the duties thereof,—and no more was necessary. But the bonds in suit seem to have been prepared without reference to the law, and the conditions are much broader than the statute requires, or was necessary. By these, Logan was not only required to account for the money and property which might come into his hands as Indian agent, but for all public moneys and property, however or in whatsoever character received.

In U. S. v. Bradley, 10 Pet. [35 U. S.] 343, it was held, in the language of the syllabus of the case, that a "bond given to the United States by a paymaster and his sureties, one part of the condition being in conformity with the act of congress which directed bonds to be taken from paymasters, is valid in that part, though it also contained other stipulations not required by the act. these latter being distinct and separable from the former, and it not appearing that any compulsion was used to obtain the bond."

But here it is a question whether the authorized and unauthorized provisions of the conditions are separable or not.—U. S. v. Mynderse [Case No. 15,850]; while it is distinctly alleged in the pleas that the bonds were obtained by compulsion.

In U. S. v. Tingey, 5 Pet. [30 U. S.] 115, the circumstances were exactly like those in the case at bar. The principal in the bond was a purser in the navy, and the condition required by the statute was, that he would faithfully perform all the duties of purser in the navy of the United States, while the condition written in the bond was, that he would account for all public moneys and property received by him or committed to his care, without limiting his liability to such as

might come into his hands as purser. The defendant, a surety on the bond, pleaded these facts, and alleged that the bond was extorted from the principal by the secretary of the navy under color of office, as a condition of his remaining in the office of purser and receiving the emoluments thereof. Upon a demurrer to the plea in the circuit court it was held to be a good defense, and the judgment was affirmed by the supreme court.

The court, after stating the fact that the condition of the bond was different from that prescribed by the statute, because it created a liability for all moneys or property received by the principal, "whether officially as purser or otherwise," and that it was not voluntarily given, says: "It (the bond) was demanded of the party upon the peril of losing his office; it was extorted under color of office against the requisitions of the statute. It was plainly, then, an illegal bond; for no officer of the government has a right by color of his office to require from any subordinate officer, as a condition of holding office, that he should execute a bond with a condition different from that prescribed by law."

In Hawes v. Marchant [Case No. 6,240]. Mr. Justice Curtis, in considering this case and others cited from the lower courts to the same effect, says: "The rule which avoids such bonds rests upon the want of authority in the public officer to take them. and upon the policy of guarding the citizen against oppression by the illegal exercise of official power. It is well stated by Sewall. J., in Churchill v. Perkins, 5 Mass. 541, that, when the plaintiff demands the fruit of an obligation obtained colore officii, it must be shown that the demand is justified by some authority of the officer, otherwise it is against sound policy, and is void by the principles of common law. By "colore officii." however, must be understood some illegal exertion of authority, whereby an obligation is extorted which the statute does not require to be given. If all parties voluntarily consent to enter into the bond, and the departure from the precise requisitions of the statute is made by mistake, or accident, and without any design to compel the obligees to enter into an undertaking not required by law, the bond is not invalid, simply because it contains something which the statute does not authorize."

Upon these authorities, and particularly the case of U. S. v. Tingey [supra], it must be held that these pleas are a good defense to the action. The demurrer to them is therefore disallowed.

The demurrer to the fifth plea is also overruled. In U. S. v. Thomas, 15 Wall. [82 U. S.] 337, the supreme court, in the language of the syllabus, held that "a receiver of public money, under bond to keep it safely and pay it when required. is not bound to render the money at all events. but is excused if prevented from doing so by the act of God

or the public enemy, without any neglect or fault on his part." In delivering the opinion of the court, Mr. Justice Bradley, after admitting the law to be that the "performance of an express contract is not executed by reason of anything occurring after the contract was made, though unforeseen by the contracting party and though beyond his control," makes a distinction "between an absolute agreement to do a thing and a condition to do the same thing inserted in a bond;" saying that "in the latter case the obligor, in order to avoid the forfeiture of his obligation, is not bound at all events to perform the condition, but is excused from its performance when prevented by the law or an overruling necessity,"—citing Co. Litt. 206a; 2 Bl. Comm. 340, 341, and concludes: "We think that the case is within the law as laid down by Lord Coke, and that the receiver, and especially his sureties, are entitled to the benefit of it; and that no rule of public policy requires an officer to account for moneys which have been destroyed by an overruling necessity, or taken from him by a public enemy, without any fault or neglect on his part."

Certainly, according to the facts stated in this plea, this sum of money was lost or destroyed by an overruling necessity,—the act of God,—without fault or neglect on the part of Logan, and this brings the case within the ruling of the supreme court.

There must be judgment on the demurrers for the defendant.