# THE SUPREME COURT

OF

## OREGON.

### MARCH TERM, 1887.

---

[Filed March 28, 1887.]

THE COUNTY OF DOUGLAS, Respondent, *v.* THOMAS
CLARK et al., Appellants.

Roads, Private.—A petitioner having pursued the mode pointed out by the Code
Act of 1876 (Sess. Laws), becomes entitled to the road as a matter of right.

Same.—A bond exacted by the County Court to indemnify the county against
the expenses of location, and damages assessed, is void as being contrary to pub-
lic policy.

Same.—The County Court has no authority to take such a bond under section 1,
Misc. Laws. That section refers only to corporate affairs.

Same.—The power of locating a private road is entirely of a public nature.

Appeal from Douglas County.   Reversed.

*W. R. Willis,* for Appellants.

*J. W. Hamilton,* for Respondent.

Thayer, J.—The appellant commenced an action in said
Circuit Court, upon a bond executed by the appellant to the
county of Douglas, in the penal sum of two hundred dollars.
The condition in the said bond is as follows:—

"Whereas, the above-named Thomas Clark has made applica-

tion to the above-named court for a private road from his premises in section two (2) township twenty-three (23) south, range four (4) west, in Douglas County, Oregon, over and across the land of David Huff, in said section, township, and range, and county and State, said private road to be thirty feet wide. Now, if the said Thomas Clark shall pay all cost and damage that may be awarded against him upon the hearing, granting, or refusal of said petition, or opening of said private road as prayed for in said petition, or otherwise, then this obligation to be null and void, else to remain in full force and effect."

It appears from the complaint that after the said petition for the road was presented, viewers were appointed by the County Court for said county to view out and locate it, and to assess damages to be sustained thereby; and that before proceeding further in the matter, the County Court exacted from the petitioner the bond which he, as principal, and the two other appellants as sureties, executed. The complaint also contains an allegation that the bond was taken to indemnify the county against the payment of costs and damages which might be awarded against it by reason of the location of the road, and to provide against the costs and damages that might be assessed against it on appeal, from the assessment of damages given by the viewers to the Circuit Court; and it contains a further allegation that such appeal was taken; and that it was adjudged by the Circuit Court that the appellant, said David Huff, recover judgment against the county for damages sustained by him by reason of the location of the road through his premises, in the sum of three hundred dollars, with costs of proceeding, which judgment and costs the county had paid; that the county had demanded this money from the appellants, but that they had not paid it. The prayer of the complaint is for the recovery of this amount. The appellants filed a demurrer to the complaint, upon the ground that the facts stated therein did not constitute a cause of action. The Circuit Court overruled the demurrer, and the appellants refusing to answer over, judgment was entered against them in accordance with the prayer of the complaint, from which judgment this appeal is taken.

The main question in the case is whether the County Court has authority to exact from the petitioner for the road such a bond as the one in suit, and to enforce its penalty for a violation of its conditions.  The proceeding was taken under the Act of 1876.  (Session Laws, 1876, p. 25.)  Section 1 of said act provides:  "That whenever it shall appear to the County Court by the sworn petition of any person that the residence of such person is not reached by any convenient public road heretofore provided for by law, and that it is necessary that the public and such person shall have ingress and egress from the residence of such person, the County Court shall, thereupon, appoint three disinterested freeholders of the county as viewers, and cause an order to be issued directing them to meet at a time therein specified, and not less than ten days from the making of such order, and view out and locate a county road thirty feet in width, from the residence of such person to some other public road or navigable stream, according to the application, and to assess the damages to be sustained thereby.  A copy of which order shall be served upon the persons through whose land said road shall pass, within four days after the making of such order."  Section 2 of said act provides the mode of performance of the duty of the viewers. Section 3 provides in regard to the report of the viewers to the County Court, and that if the County Court is satisfied that such report is just, and after payment by the petitioner of the costs of locating such road, and the damage is assessed by the viewers, that the court shall order such report to be confirmed, and declare it to be a public road, and that the same shall be recorded as such, and that any person aggrieved by the assessment of damages may appeal within twenty days after the confirmation of such report to the Circuit Court.  Section 4 provides for the prevention and punishment of persons obstructing the road.  Section 5 provides that such public roads shall be called "roads of public easement," and shall be opened and kept public by the person applying for the same.  These various provisions include the substance of said act, and are easily construed.  They confer no power whatever upon the County Court in regard to the exaction or enforcement of any bond, nor can it be implied from any express

authority given. The mode of procedure is explicitly pointed out therein. The County Court, whenever a sworn petition of a person is presented to it showing the necessary facts, must appoint the viewers, and upon their report being made to it shall, if it is satisfied that the report is just, and after payment of the cost of location and damage assessed, order it confirmed, and declare the route viewed out and located to be a public road, and that it be recorded as such. The County Court cannot properly say to the petitioner that it will confirm the report and establish the road upon his executing a bond. Such roads can only be established when it is necessary that the public and the applicant have ingress and egress from the residence of the applicant, and after he has paid the costs of locating it and the damages assessed by the viewers, and then it becomes a matter of right. To demand a bond in such case would be contrary to public policy. It would be liable to influence the court to overlook the public necessity which authorizes the locating of such roads.

The counsel for the appellant has expressed in his brief the correct view of the question, and I can do no better than to produce his argument, and the authorities he cites to sustain it.

The County Court had no authority to require or take this bond. See Session Laws, 1876, page 25, section 1; and page 26, section 3, provides that if the County Court is *satisfied* that such report is just, and after payment by the petitioners, they shall declare such road to be a public road.

Our statute has prescribed when and in what cases the County Court may require bonds of petitioners for public roads. (See Code, p. 725, § 14.)

This is not such a case; the County Court for the transaction of county business is a creature of the statute, and must look to the statute for authority to act in any case, and this statute must be respected.

A bond taken by an officer without authority to require it is void. (*Benedict* v. *Bray*, 2 Cal. 251–255; *Alexander* v. *Silbernagel*, 27 La. An. 557; *United States* v. *Humason*, 6 Sawy. 199; Baylies on Sureties and Guarantors, p. 60.)

The respondent's counsel claimed that the county through their regularly authorized officers had the right, and it was their duty to demand from the petitioner for said road of public easement the payment of all costs and damages incurred in the location of said road.    (Session Laws, 1876, p. 26, § 3.)

This carries necessarily by implication the right to provide for the re-imbursement of the county by a sufficient undertaking.

The power given by statute to a county to make "all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county," is sufficiently broad and comprehensive to include all contracts which have for their object the securing of the repayment of money necessarily expended at the petition and request of one most interested. (Code, p. 535, § 1.)

The bond in this case is under seal, as shown by the complaint, and imports a consideration coming within the rule adopted by this court in the case of *Paddock* v. *Hume,* 6 Or. 86.

When an undertaking does not contravene public policy, nor violate a statute, it is binding between the parties, and will be enforced by the courts, and cited in support of the last proposition a large number of cases.    I am unable to agree with this construction of the Act of 1876, or that the power given to counties by section 1, page 535, of the General Laws of Oregon, authorizing them to make "all necessary contracts in relation to the property and concerns of the county," has any application to the laying out of public roads.    The authority there referred to relates to corporate affairs, while the one sought to be exercised is entirely of a public nature; nor do I believe that the requirement of the bond in such a case would not contravene public policy.    On the other hand, I believe, for the reasons before suggested, that it would.    Under this view it is unnecessary to consider any of the other points in the case.    The judgment should be reversed and the complaint dismissed.