Argued and submitted October 3, 2002, affirmed May 15, 2003

Clelan DUDEK
and Lois Dudek,
*Petitioners,*

*v.*

UMATILLA COUNTY
and Danny R. Smith,
*Respondents.*

2002-048; A119050

69 P3d 751

Douglas E. Hojem argued the cause for petitioners. With him on the brief was Corey, Byler, Rew, Lorenzen & Hojem.

D. Rahn Hostetter argued the cause and filed the brief for respondent Danny R. Smith.

No appearance for respondent Umatilla County.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.*

DEITS, C. J.

---

* Kistler, J., *vice* Warren, S. J.

**DEITS, C. J.**

Petitioners[1] seek review of a Land Use Board of Appeals (LUBA) decision affirming Umatilla County's grant of a partitioning request. The county's decision included a determination that a portion of the Umatilla County Development Ordinance (UCDO)[2] need not be applied to the partitioning. The applicant before the county, Danny R. Smith (respondent),[3] sought to partition 20 acres located six miles south of the City of Pendleton into three lots, one of ten acres and two of five acres. The property is zoned for rural residential use and has a two-acre minimum lot size. The effect of the county's determination not to apply a portion of its code is to relieve the applicant of the requirement to widen a roadway serving the partitioned area to county construction standards. We affirm LUBA's affirmance of the county's decision but for different reasons.

The subject property is served by a private road easement, Jerico Lane. The road easement is presently 50 feet wide and about 3,500 feet long. A small portion of the lane is on respondent Smith's property. The county's findings recite that Jerico Lane is graveled to a width of 14 to 20 feet and that the portion of the lane not on respondent's property serves 18 other properties. The proposed three-parcel partition would add about seven vehicle trips per day, according to the county. The county estimated that the use generated by the newly partitioned properties would constitute approximately 15 percent of the total use of the road. Under UCDO section 152.684(G)(3), if a roadway created for or serving partitioned property serves four or more lots and will likely serve additional parcels due to development pressure in the area or will likely be an extension of a future road, the right-of-way must be 60 feet wide and the driveable portion of the road must meet certain construction standards.[4]

---

[1] Petitioners are persons who live near or on Jerico Lane.

[2] The parties and LUBA refer to the ordinance as the Umatilla County Development Ordinance. The county's findings refer to the ordinance as the Umatilla County Code of Ordinances. We use LUBA's designation.

[3] Respondent Umatilla County did not appear. All references to "respondent" are to respondent Smith.

[4] UCDO section 152.684 provides, in part, that a "Type II" land division approval must include an easement as follows:

The right-of-way and road improvement requirements of the cited ordinance were the subject of a LUBA review proceeding in 2001 involving the same partition request and the same parties. In that proceeding, *Dudek v. Umatilla County*, 40 Or LUBA 416 (2001), LUBA reviewed the county's approval of the partition, which imposed a condition requiring that the portion of the existing roadway easement located on applicant's property be widened to 60 feet. Petitioners challenged the approval before LUBA, contending that the entire length of Jerico Lane must meet the requirements of UCDO section 152.684(G)(3). Petitioners also argued that the county's findings were not sufficient because they failed to explain the county's decision to apply one of the approval criteria, the right-of-way standard, but not the other, the construction standard.

On appeal, LUBA remanded the decision on the ground that the county's findings on the easement and roadway requirements were unclear and that the county had not made a necessary interpretation of UCDO section 152.684(G)(3). LUBA specifically directed the county to resolve what LUBA regarded as ambiguities in the ordinance and to determine whether the easement would serve four or more lots or parcels and, if it would, whether the road is likely to serve additional lots or parcels in the future "due to development pressures in the area" or likely to "be an extension of a future road as specified in a future road plan." *Dudek*, 40 Or LUBA at 423 (internal quotation marks omitted). LUBA also told the county to consider whether UCDO section 152.684(G)(3) applied to the entire length of Jerico Lane or only to the part of the road easement that crosses respondent's property.

---

"(G) Dedicated road or public recorded easement shall be provided to each parcel and conform to right-of-way and improvement standards as follows:

"* * * * *

"(3) If a public road or recorded easement for access purposes in a Type II Land Division will serve four or more lots and will likely serve additional parcels due to development pressures in the area, or likely be an extension of a future road as specified in a future road plan, a minimum of a 60 foot right-of-way shall be required and be improved to a 'B1' standard."

The "B1" standard requires a certain gravel depth and size and use of an oil mat.

■ On remand, the county again approved the partition. In its order, the county addressed LUBA's questions about the applicability of UCDO section 152.684(G)(3) and found that the Jerico Lane easement would serve more than four properties and that the requirements of the ordinance were applicable. The county concluded that, under its ordinance, respondent would need to increase the width of that portion of Jerico Lane on his property to 60 feet. The county also concluded that, under its ordinance, the portion of Jerico Lane that goes approximately 3,500 feet from respondent's property to a nearby county road, Lake Drive, must also be widened to 60 feet as a condition of approval of the partitioning and that the road would need to comply with county construction standards. In addition, the county found that, under the ordinance, respondent would have to obtain from property owners adjacent to Jerico Lane additional right-of-way needed to bring the road easement up to 60 feet in width. Despite those findings, the county then went on to conclude that, because of the substantial burden that those requirements would impose on respondent, the county would not enforce that portion of its ordinance. It explained:

> "To impose on the applicant the burden of making off-site improvements by expanding the easement width and road construction standards the entire length of Jerico Lane would not be in [pro]portion to the estimated 15% impact of the development. The county cannot condition the partition and the development on obtaining additional right-of-way and improvements in a greater proportion than the impact of the development. As a result, the standards under Umatilla County Code of Ordinances § 152.684(G)(3) cannot be applied to the portion of Jerico Lane off of the subject property. As a precedent condition, however, the applicant must execute and record an Irrevocable Consent Agreement to participate in future improvements to Jerico Lane."

While not expressly cited in the county's order, the apparent legal source for the county's conclusion not to require adherence to the right-of-way requirements of its ordinance is *Dolan v. City of Tigard*, 512 US 374, 114 S Ct 2309, 129 L Ed 2d 304 (1994). In that case, the United States Supreme Court concluded that, to avoid an unconstitutional taking, when an *ad hoc* local process results in a requirement that a landowner dedicate real property for public use in

exchange for a development permit, the exaction required by the governmental entity must be "roughly proportional" to the negative impacts of the proposed development. *Dolan*, 512 US at 391.[5]

Following the county's decision on remand, petitioners again sought LUBA review of the county's approval of the partition. Before LUBA, petitioners challenged the county's reliance on the *Dolan* "rough proportionality" standard and again asserted that the county should have applied the requirements of UCDO section 152.684(G)(3) and should have either imposed the conditions required by the ordinance or denied the application.[6] LUBA concluded that the county did not err in refusing to condition its approval of the partitioning request on respondent's compliance with the requirement for widening and improving Jerico Lane imposed by UCDO section 152.684(G)(3). *Dudek v. Umatilla County*, 42 Or LUBA 427, 434 (2002). In reaching that conclusion, LUBA agreed with the county's determination that the "rough proportionality" test announced in *Dolan* applied to the county's decision. However, LUBA did not address the county's specific application of the rough proportionality test because petitioners challenged only the county's decision to apply *Dolan*'s heightened scrutiny to this partitioning request. Petitioners did not assign error to or otherwise challenge the county's finding that the exactions required under the ordinance would fail the *Dolan* test.

---

[5] The requirement for "rough proportionality" between the property exacted and the impacts of development comes into play only if there first is found an "essential nexus" between a legitimate state interest and the condition attached to the development permit. *Dolan*, 512 US at 386. The need for that essential nexus was set out in *Nollan v. California Coastal Comm'n*, 483 US 825, 837, 107 S Ct 3141, 97 L Ed 2d 677 (1987). The court in *Dolan* said that, once the essential nexus is found to exist, a court must then decide the required degree of connection between the exaction and the projected impact of the proposed development. That connection must be one of "rough proportionality" to survive a takings claim. *Dolan*, 512 US at 386-91.

[6] LUBA noted that, because petitioners did not make the argument, it was not deciding the question of whether, after determining that imposing the conditions of the ordinance would violate *Dolan*'s rough proportionality test, the county's only option was to deny the application. *Dudek*, 42 Or LUBA at 434. We also do not address that issue because it was not preserved. We decide this case only on the issues framed by petitioners.

■    On review, petitioners argue that LUBA erred in concluding that the "rough proportionality" principles announced in *Dolan* prevented the county from imposing the requirements of UCDO section 152.684(G)(3). Petitioners assert that the heightened scrutiny required by *Dolan* does not apply when a local government ordinance establishes a legislatively adopted standard applicable to a broad class of property and the ordinance is not subject to interpretation or adjudication on a case-by-case basis.

Petitioners make the additional argument, relying on our recent decision in *Rogers Machinery, Inc. v. Washington County*, 181 Or App 369, 45 P3d 966, *rev den*, 334 Or 492 (2002), *cert den*, ___ US ___ , 155 L Ed 2d 225 (2003), and the California Supreme Court's decision in *Ehrlich v. City of Culver City*, 12 Cal 4th 854, 50 Cal Rptr 2d 242, 911 P2d 429 (1996), that the *Dolan* proportionality test does not apply to the county's decision here because the Umatilla County ordinance does not require a dedication of private property to public use in exchange for a development permit. They argue that, in this case, there was no requirement that private property be dedicated to the public nor that public property be improved. Rather, petitioners assert, the required right-of-way widening calls only for the acquisition of an easement allowing the public to go to and from the developed property. As a result of those distinctions, petitioners insist that *Dolan* is not applicable and that LUBA erred in concluding that it was.

As we discussed in *Rogers Machinery, Inc.*, a significant consideration in the determination of whether *Dolan's* rough proportionality test applies to a particular government action is whether the action is taken pursuant to a legislatively adopted scheme that applies to a broad class of property and whether the action involves the exercise of discretion. Also pertinent is whether the government action requires adjudication to determine whether and how a government regulation applies to *particular* property. As we explained in *Rogers Machinery, Inc.*, one of the main reasons those considerations are pertinent is that, when government action is taken pursuant to a legislatively adopted standard that was not adopted to apply to particular properties or development but rather to a broad class of property, and

when there is no need for adjudication or the exercise of discretion at the time that the standard is applied to a particular property, there is far less danger of a governmental entity attempting to use its power to extort unconstitutional conditions from persons seeking governmental approval of a specific proposal. 181 Or App at 389-90, 397-98. In *Rogers Machinery, Inc.*, we concluded that a local ordinance imposing a traffic improvement fee was not subject to *Dolan*'s heightened scrutiny test. *Id.* at 399. We reached that conclusion based on the above considerations: The ordinance applied to a broad class of property and the fee was calculated pursuant to a legislatively established formula that required no significant exercise of discretion on the part of the local government in applying the formula. *Id.* at 395-99.

In arguing that this case differs from *Rogers Machinery, Inc.*, and that the heightened scrutiny of *Dolan* does apply, respondent argues that the standards imposed under UCDO section 152.684(G)(3) are not *objectively* applied to a broad class of property. Rather, according to respondent, application of the ordinance requires both adjudication on a case-by-case basis and a significant exercise of discretion as to how the ordinance applies in each particular case. Respondent points to the language of UCDO section 152.684(G)(3) and argues that there is

"no standard as to what roads at what distances from the subject property will 'likely serve' any particular property. For example, will a landowner who has access to his property over one improved public access be required to improve a second or third access road to the property because those roads will also 'likely serve four or more lots' as well as the applicant's parcel? If so, will the applicant have to finance improvements to roads that are one or two miles away from the subject property but which, in the county's opinion, will 'likely' be used by the applicant to 'serve' his property?"

The Umatilla County ordinance does apply to a broad class of property. However, as discussed above, the inquiry does not end there. As respondent points out, the practical reality is that application of this ordinance to a particular case requires a significant exercise of discretion. It

effectively requires an adjudication in each case. The applicability of the ordinance must be determined by an assessment of whether the land division "will serve four or more lots *and* will *likely* serve additional parcels due to development pressures in the area, or *likely* be an extension of a future road as specified in a future road plan[.]" UCDO section 152.684(G)(3) (emphasis added). At a minimum, the provision calls for a close look at the proposed partition, the development patterns and pressures in the area (not to mention a definition of the "area"), how many lots the road will serve, and the county's future plans for the area. The inquiry necessary to comply with the code is focused on the applicant and the individual parcel or parcels to be partitioned. Once the ordinance is determined to be applicable, the county must then exercise further discretion in identifying what roads must be improved to the ordinance's specifications to allow access to the property.

Thus the determination of the applicability of this ordinance and, if applicable, the specific conditions that must be imposed under the ordinance, requires an assessment of the particular circumstances and an exercise of discretion by the county. It is also clear that this process is meaningfully different from the mechanical and nondiscretionary process employed in the ordinance under review in *Rogers Machinery, Inc. See also Homebuilders Assn. v. Tualatin Hills Park & Rec.*, 185 Or App 729, 737, 62 P3d 404 (2003) (system development charge that required developers to pay a fee calculated by means of carefully determined formula based on impact that development will have on infrastructure is not subject to *Dolan*'s rough proportionality test). The fact that the Umatilla County ordinance requires a sorting out of the individual circumstances affecting the applicant in deciding how the ordinance operates under the particular circumstances distinguishes this case from *Rogers Machinery, Inc.*[7] In contrast to *Rogers Machinery, Inc.,* and *Homebuilders Assn.*, here, there appears to be a risk of leveraging

[7] In arguing that the application of the ordinance here involves an *ad hoc* adjudication, respondent contends that none of the other 18 property owners adjacent to Jerico Lane has been required to comply with the conditions of the county's ordinance for road improvements and that this is indicative of the discretionary nature of this ordinance. Such an *ad hoc* application of an ordinance would be consistent with a determination that the application of the ordinance to a particular case requires the exercise of discretion. We do not rely on that factor here because, based on this record, we do not know how many of the other property owners

or singling out of the applicant for concessions as a condition of development approval—a risk not present in widely applicable legislative enactments that do not require the exercise of meaningful discretion in applying the ordinance. *See Dolan*, 512 US at 385; *Nollan*, 483 US at 837-38 n 5. Accordingly, we conclude that that factor would indicate that the application of the Umatilla County ordinance at issue here should be subject to the heightened takings clause standard articulated in *Nollan* and *Dolan*.

■■ Another factor in determining whether heightened scrutiny under *Dolan* is appropriate in a particular case is the *nature* of the conditions imposed, *i.e.*, whether the conditions require dedication of property to public use. Petitioners argue that the nature of the exaction imposed under the county's ordinance here is not such as to require the application of *Dolan*. Specifically, petitioners contend that the ordinance does not require the dedication of any private property to the public. Petitioners explain:

> "There is also no requirement that property be dedicated to the public. While under the ordinance this easement must be made a public recorded easement, that is far short of a dedication to which the *Dolan* analysis applied: Private property is not being requested of the applicant; applicant is not being required to improve publicly owned property; and importantly, the ordinance does not require the applicant to provide a street appurtenant to other property for general public use. All that the ordinance requires is an easement that allows the public to go to and from the developed property on a road which meets minimal transportation requirements."

There are two aspects to petitioners' argument on this issue. First, they assert that, because the county code does not require that the property interest that the applicant is to obtain for right-of-way be dedicated to the public, *Dolan* is not applicable. It is petitioners' position that the fact that others may benefit from the easement improvements does

---

requested a partition of their property that would implicate the ordinance. The record includes testimony from only one property owner that a request for a partition was denied because of the requirements of the ordinance.

not implicate the "essential nexus" and "rough proportionality" standards announced in *Nollan* and *Dolan.* We do not agree. The exaction required by UCDO section 152.684(G) is termed "[d]edicated road or public recorded easement." The purpose of the exaction is to provide access to the parcels served by the easement. The ordinance does not address a strictly private easement, and only an easement permitting public use is recognized under the ordinance. While the easement technically may not be held by the county, it serves the county's property access and travel purposes. As such, the fact that a required "public" easement remains in private hands does not insulate the county's requirement for the easements from the Takings Clause of the Fifth Amendment to the United States Constitution or Article I, section 18, of the Oregon Constitution. *See Barkley et ux. v. Gibbs*, 180 Or 647, 650-56, 178 P2d 918 (1947) (discussing exercise of eminent domain and public and private easements under Article I, section 18, of the Oregon Constitution); *Towns v. Klamath County*, 33 Or 225, 232-33, 53 P 604 (1898) (same); *Chapman v. Perron*, 69 Or App 445, 447-49, 685 P2d 492 (1984) (same).

The second aspect of petitioners' argument on this issue is that nothing that the county is requiring amounts to requiring respondent to give up private property. As discussed above, the county found that the ordinance here, if applied to respondent's partitioning request, would necessitate the imposition of conditions requiring respondent to purchase a 10-foot right-of-way easement from property owners adjacent to Jerico Lane and to dedicate that easement to roadway use. It would also require applicant to improve the road to county construction standards. With respect to the requirement to improve the road, that condition appears to call only for the expenditure of money by applicant. Because this condition involves only a monetary exaction, *Dolan* may or may not be implicated.

As we recognized in *Rogers Machinery, Inc.*, and later in *Homebuilders Assn.*, the question of under what circumstances the heightened scrutiny imposed by *Dolan* applies to exactions that are monetary in nature is a complex question and is not completely resolved. Many courts have drawn a distinction between real property exactions and obligations to pay money in deciding whether a constitutional

takings analysis is applicable. In *Kitt v. U.S.*, 277 F3d 1330, 1336 (Fed Cir 2001), *modified on reh'g on other grounds*, 288 F3d 1355 (Fed Cir 2002), the Federal Circuit quoted with approval its earlier decision in *Commonwealth Edison Co. v. U.S.*, 271 F3d 1327, 1340 (Fed Cir 2001), *cert den*, 535 US 1096 (2002), in which it held that the "mere imposition of an obligation to pay money * * * does not give rise to a claim under the Takings Clause of the Fifth Amendment."[8] Stated somewhat more bluntly, "[r]equiring money to be spent is not a taking of property." *Atlas Corp. v. U.S.*, 895 F2d 745, 756 (Fed Cir), *cert den*, 498 US 811 (1990); *see also Unity Real Estate Co. v. Hudson*, 178 F3d 649, 659 (3d Cir), *cert den*, 528 US 963 (1999); *Anker Energy Corp. v. Consolidation Coal Co.*, 177 F3d 161, 170 n 3 (3d Cir), *cert den*, 528 US 1003 (1999).[9]

It is not necessary, however, for us to resolve the question of *Dolan*'s applicability to pure monetary exactions because, as we will explain, we believe that the court's

---

[8] *Commonwealth Edison Co.* relied in part on a view of five justices that *Dolan* should not be extended beyond circumstances other than those requiring an exaction of real property in *Eastern Enterprises v. Apfel*, 524 US 498, 118 S Ct 2131, 141 L Ed 2d 451 (1998). In that case, Justice Kennedy, in a separate opinion that four other justices joined in part, treated the Coal Act as imposing an obligation to pay money and, as such, as not implicating the Takings Clause. *Eastern Enterprises*, 524 US at 540 (Kennedy, J., concurring in the judgment and dissenting in part).

[9] The Federal Circuit's treatment of obligations to pay money as outside the Takings Clause also finds support in a Supreme Court opinion in which the Court observed that "money is fungible." *United States v. Sperry Corp.*, 493 US 52, 62 n 9, 110 S Ct 387, 107 L Ed 2d 290 (1989). In *Sperry Corp.*, the Court considered the assertion that monetary deductions from awards made by the Iran-United States Claims Tribunal in favor of United States claimants were takings. The Court rejected the assertion, stating that, if the obligation to pay were treated as if it were a "physical occupation requiring just compensation, so would be any fee for services, including a filing fee that must be paid in advance. Such a rule would be an extravagant extension of *Loretto* [*v. Teleprompter Manhattan CATV Corp.*, 458 US 419, 102 S Ct 3164, 73 L Ed 2d 868 (1982)]." *Id.* In *Loretto*, the Court held that the application of a regulation requiring that space be made available on private property for cable television equipment was a taking. 458 US at 438. In other words, money is not the equivalent of real property under the Takings Clause such that a requirement to pay money should be treated as though it were a physical occupation or exaction of real property. To be sure, the Supreme Court has applied the Takings Clause to alleged takings of money, but the Court's application of the Takings Clause has been limited to cases in which the money allegedly taken was in an identifiable fund, rather than charged as a fee for service or a tax. *See Brown v. Legal Foundation of Washington*, _____ US _____ , 123 S Ct 1406, 155 L Ed 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 US 156, 169-72, 118 S Ct 1925, 141 L Ed 2d 174 (1998); *Webb's Fabulous Pharmacies Inc. v. Beckwith*, 449 US 155, 101 S Ct 446, 66 L Ed 2d 358 (1980).

requirement that respondent purchase a 10-foot easement from the property owners adjacent to Jerico Lane is more akin to a real property exaction and, therefore, the *Dolan* analysis is implicated here.[10] As explained above, that requirement involves first the purchase of and then the dedication of a possessory interest in property. To be sure, in requiring respondent to obtain a 10-foot easement from the other property owners along Jerico Lane, the county is not requiring him to dedicate property that he owned at the time of the application. Rather, respondent must purchase the property interest and *then* dedicate the easement to roadway purposes for the benefit of his own properties, as well as those of other nearby property owners. Nonetheless, respondent is being divested of an interest in property, albeit a newly acquired one. Consequently, the county's ordinance here does not call for only the expenditure of a fungible resource. Rather, with respect to the right-of-way requirement, it calls for the purchase of and then dedication or giving over of the acquired property to the use of other members of the public. An applicant who is required to purchase and then dedicate property is in a very similar position to an applicant who is required to dedicate a possessory interest in property that is owned at the time of the application. That condition effectively is a requirement to dedicate a property interest. In other words, that demand, in exchange for development approval, is the equivalent of the exaction of a possessory interest in real property and is therefore subject to heightened scrutiny under *Dolan*.[11]

---

[10] As we noted in *Rogers Machinery, Inc.*, 181 Or App at 394-95 n 14, our holding in *Clark v. City of Albany*, 142 Or App 207, 921 P2d 406 (1996), regarding the application of *Dolan* to the imposition of requirements to make off-site improvements is open to question following the Supreme Court's decision in *Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 US 687, 119 S Ct 1624, 142 L Ed 2d 882 (1999). In that case, the Supreme Court cautioned against application of the test in *Dolan* beyond "the special context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use." 526 US at 702. The recent federal decisions cited, 187 Or App at 515 nn 8, 9, suggest such a condition, to the extent that it requires the expenditure of money and not a giving over of a real property interest, might not fall under the same review as a real property exaction requirement of the sort seen in *Dolan*.

[11] The county's partitioning approval, were it to require enforcement of UCDO section 152.684(G)(3), would also require respondent to give up a portion of his own land to widen the existing right of way. It would appear that that condition alone would be sufficient to implicate *Dolan*. However, the applicant here did not object

For the above reasons, we conclude that LUBA correctly affirmed the county's determination that *Dolan*'s rough proportionality test applied to that portion of the partitioning approval ordinance that called for right-of-way acquisition and dedication or relinquishment of the same for public use.

Affirmed.

---

to that portion of the county's demand or argue that it failed to meet the "rough proportionality" test.