Argued and submitted October 26, 1999, reversed and remanded with instructions April 12, 2000

## PACIFIC WESTERN COMPANY
### and Lowell E. Patton,
*Appellants,*

*v.*

## LINCOLN COUNTY,
*Respondent,*

*and*

## Marcia MICHAEL,
### Alvin Tornow, Bonnie Tornow, Ann Robins, and Jane Mara,
*Respondents.*

### (975869; CA A104529)

998 P2d 798

William C. Cox argued the cause for appellants. With him on the brief was Gary P. Shepherd.

Wayne Belmont argued the cause for respondents Lincoln County, Marcia Michael, Alvin Tornow and Bonnie Tornow. With him on the brief was Robert W. Connell.

No appearance for respondents Ann Robins and Jane Mara.

Before DeMuniz, Presiding Judge, and Haselton, Judge, and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Petitioners appeal from the circuit court's judgment in a writ of review proceeding that affirmed an order of the Lincoln County Board of Commissioners vacating a portion of a public roadway, NW Sandy Drive, in Lincoln County. Petitioners contend, in part, that the circuit court erred in rejecting their claim that the Board had misconstrued applicable law, *viz.*, ORS 368.331, and had consequently failed to follow applicable procedures. ORS 34.040(1)(b). We agree with petitioners that the Board misconstrued ORS 368.331; that under that statute, the Board was required to obtain petitioner Pacific Western Company's consent to the vacation; and, consequently, that the Board, in allowing the vacation without Pacific Western's consent, failed to "follow the procedure applicable to the matter before it." ORS 34.040(1)(b). Accordingly, we reverse and remand.

The material facts are undisputed: Petitioner Lowell Patton, individually, owns a large parcel of property known as Lot 1901, west of Highway 101 and just east of the Pacific Ocean Beach in Lincoln County. In August 1993, Patton, without applying for, or receiving, the county's approval, partitioned Lot 1901, carving out a one-acre parcel in the northwest corner of the lot. Patton then executed a bargain and sale deed purporting to transfer fee title in that one-acre parcel to Pacific Western, a corporation wholly owned by Patton. The Lincoln County clerk recorded that conveyance, and the Lincoln County Assessor denominated the "new" one-acre parcel as tax lot 1903. Thereafter, Pacific Western began developing Lot 1903 as a recreational vehicle park.

The only public roadway that provided access to Lot 1903 was NW Sandy Drive. That road was created in 1964 by dedication and runs north and south to the west of Highway 101. The road's southern terminus is the northern boundary of Lot 1903. On November 10, 1995, five owners of property abutting the southernmost 105 feet of NW Sandy Drive (*i.e.,* those immediately to the north of Lot 1903), filed a petition with the Lincoln County Board of Commissioners, pursuant to ORS 368.341, to initiate proceedings to vacate that portion

of Sandy Drive.[1] Neither Patton nor Pacific Western joined in that petition. The following map (not drawn to scale) illustrates the area that is the subject of the dispute:

On June 5, 1996, the Board held a public hearing on the petition. Patton and Pacific Western objected to the vacation, asserting, *inter alia,* that the vacation of the road would "landlock" Lot 1903, and, thus, the vacation would violate applicable statutory requirements. On June 26, 1996, the Board granted the petition and entered a final order, Order No. 6-96-200, allowing the requested vacation. The Board concluded that the "request [to vacate the road] me[t] the statutory requirements for a vacation and [wa]s in the public interest." Patton and Pacific Western filed a notice of intent to appeal the vacation order to LUBA. ORS 197.830.[2]

---

[1] Those landowners subsequently intervened in this action. "Respondents" in this opinion refers to those parties as well as to Lincoln County.

[2] In October 1996, while LUBA's review was pending in an action not related to the vacation proceedings at issue here, Lincoln County obtained a circuit court judgment ordering Patton and Pacific Western to "complete an application with Lincoln County for a lawful partition of [lot 1901 and 1903]." That judgment further ordered that, if the county denied the application for partition, then Patton and Pacific Western were to "record all legal instruments in the Lincoln County Book of Deeds and Mortgages * * * necessary to remove the purported partition of the * * * property." Patton and Pacific Western did not comply. However, from this record, we cannot tell whether the county has acted to enforce that judgment.

Thereafter, LUBA determined that with respect to review of the Board's order vacating NW Sandy Drive because the vacation was not a land use decision or limited land use decision as defined by ORS 197.015. Accordingly, LUBA issued a final order that transferred jurisdiction for review of the Board's determination to the circuit court to be treated as a writ of review proceeding. ORS 34.102(4). Pursuant to ORS 197.850, petitioners appealed to this court, asserting that LUBA erred in concluding that it lacked jurisdiction. We affirmed without opinion, and the Supreme Court denied review. *Pacific Western Co. v. Lincoln County*, 148 Or App 272, 939 P2d 173, *rev den* 326 Or 57 (1997). On October 30, 1997, a final appellate judgment was entered and the matter was remanded to LUBA to transfer jurisdiction to the circuit court. ORS 34.102(4).[3]

On November 10, 1997, LUBA transferred jurisdiction to the circuit court, and petitioners filed their operative first amended petition for writ of review. Petitioners asserted that the Board's decision was deficient in several material respects, ORS 34.040,[4] and sought reversal of the Board's decision and restitution pursuant to ORS 34.100.[5]

---

[3] ORS 34.102(4) provides:

"A notice of intent to appeal filed with the Land Use board of Appeals pursuant to ORS 197.830 and requesting review of a decision of a municipal corporation made in the transaction of municipal corporation business that is not reviewable as a land use decision or limited land use decision as defined in ORS 197.015 shall be transferred to the circuit court and treated as a petition for writ of review. If the notice was not filed with the board within the time allowed for filing a petition for writ of review pursuant to ORS 34.010 to 34.100, the court shall dismiss the petition."

[4] ORS 34.040(1) provides:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a) Exceeded its jurisdiction;

"(b) Failed to follow the procedure applicable to the matter before it;

"(c) Made a finding or order not supported by substantial evidence in the whole record;

"(d) Improperly construed the applicable law; or

"(e) Rendered a decision that is unconstitutional."

[5] ORS 34.100 provides:

"Upon the review, the court shall have power to affirm, modify, reverse or annul the decision or determination reviewed, and if necessary, to award

In particular, petitioners asserted: (1) The Board's vacation of the 105-foot portion of NW Sandy Drive violated ORS 368.331 because the Board, in making its determination, improperly construed that statute and, consequently, failed to follow the applicable procedures regarding its obligation to obtain petitioners' consent before ordering the vacation. ORS 34.040(1)(b), (d). (2) The Board's conclusion that the vacation was in the "public interest" was not supported by substantial evidence, and, moreover, the Board improperly construed the "public interest" requirement. ORS 34.040(1)(c). (3) Petitioners were entitled to restitution for injury caused by the Board's unlawful vacation of NW Sandy Drive.

The circuit court issued a comprehensive letter opinion. As amplified below, 166 Or App at 490, the court construed ORS 368.331 and, based on that construction, concluded that the county was not obligated to obtain either of petitioners' consent to the vacation. The court further concluded that, under *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), it was precluded from reviewing the Board's determination that the vacation was in the public interest. Given those conclusions, the court did not address petitioners' alleged entitlement to restitution.

On appeal, petitioners reiterate their arguments to the trial court. We review the trial court's determination for errors of law. *Johnson v. Civil Service Board,* 161 Or App 489, 498, 985 P2d 854, *on recons* 162 Or App 527, 986 P2d 666 (1999). We agree with petitioners that the Board misconstrued and thus failed to comply with ORS 368.331. Consequently, we reverse and remand for consideration of petitioners' alleged entitlement to restitution.[6]

ORS 368.331 provides:

restitution to the plaintiff, or to direct the inferior court, officer, or tribunal to proceed in the matter reviewed according to its decision. From the judgment of the circuit court on review, an appeal may be taken in like manner and with like effect as from a judgment of a circuit court in an action."

[6] Given our disposition, we do not address or resolve petitioners' other arguments.

"A county governing body shall not vacate public lands under ORS 368.326 to 368.366 *if the vacation would deprive an owner of a recorded property right of access necessary for the exercise of that property right* unless the county governing body has the *consent of the owner*." (Emphasis added.)

The circuit court construed the emphasized language as requiring the consent only of owners "of a recorded property right of access"—that is, the court construed "of access" as modifying "recorded property right":

"As a threshold matter, consent, by the very terms of the statute, is **not** necessary *unless* the vacation '*deprives an owner . . . of a recorded property right of access necessary for the exercise of that property right . . .*' The statute **REQUIRES** that the property right **be recorded**, and the property right that is recorded *be one that establishes access.* This requirement is more than mere ownership.

"Vacation could theoretically make it impossible for a land owner to use [its] property. However, *if* the landowner recorded its 'right of access' claimed to be necessary for its exercise of its property right of access, then the county governing body is obliged to obtain the landowner's consent as per the statute. In sum, recording the fact that you **own** the property is not a 'recorded property right of access.' " (Emphasis in original; footnote omitted.)

The court concluded that, because neither petitioner was an owner of "a recorded property right of access"—*i.e.,* neither had recorded some form of access right—ORS 368.331 did not require their consent.

Petitioners argue that such a reading simply does not scan—that it is not only syntactically implausible, but impossible. Petitioners contend, instead, that the *only* reasonable reading of the statute's text is that "of access" modifies "deprives." Thus, in petitioners' view, the statute requires consent where an owner of a recorded property right would be deprived "of access necessary for the exercise of that property right." Petitioners reason that Pacific Western is the owner of a "recorded property" in Lot 1903; that the vacation would deprive Pacific Western "of access necessary for the exercise of that property right"; and, thus, that Pacific Western's consent was required.

■■    We agree with petitioners. The plain language of ORS 368.331 is susceptible to only one grammatically coherent reading. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). The following parsing of the parties' contending constructions highlights the difficulty of respondents' and the trial court's reading:

*Petitioners*:

"A county governing body // shall not vacate public lands under ORS 368.326 to 368.366 // if the vacation would deprive // an owner of a recorded property right // of access necessary for the exercise of the property right // unless the county governing body has the consent of the owner."

*Respondents*:

"A county governing body // shall not vacate public lands under ORS 368.326 to 368.366 // if the vacation would deprive // an owner of a recorded property right of access // necessary for the exercise of the property right // unless the county governing body has the consent of the owner."

Respondents' construction provides no referent for "deprive": Consent is required where vacation "would deprive an owner" *of what*? Under the respondents' reading, the statute leaves that question dangling, implausibly unanswered. Conversely, petitioners' construction answers the question clearly and grammatically: Consent is required when vacation "would deprive an owner" *of access* necessary for the exercise of a recorded property right. We thus conclude that the Board improperly construed ORS 368.331 and that the trial court erred in concluding otherwise.[7]

■    That does not, however, end our inquiry. Respondents contend that, even if "*recorded* property right" is not

---

[7] Our construction also comports with principles of common-law rights of access. *See, e.g., State v. Tarpley,* 157 Or App 693, 700, 972 P2d 1201 (1998), *rev den* 328 Or 465 (1999) (contextual inquiry includes "the preexisting common law and statutory framework within which the law was enacted"). The owner of land abutting a conventional road or highway has a common-law right of access to the property from that road. *McGowan v. City of Burns,* 172 Or 63, 75, 137 P2d 994 (1943). When granting cities and counties authority to vacate roads and highways, the legislature was aware of that common-law right, *Witten v. Murphy,* 71 Or App 511, 516, 692 P2d 715 (1984), *rev den* 298 Or 773 (1985), and the inclusion in the vacation procedures of the requirement of consent of owners who might be deprived of access is consistent with that common-law right.

qualified by "of access," Pacific Western does not fall within the statute's protection because its ownership right is not "recorded." As we understand it, respondents do not contend that Pacific Western does not have a valid "property right" or that Pacific Western is not an "owner" as defined by ORS 368.001(4). Rather, respondents' argument is that—notwithstanding the physical recording of Pacific Western's ownership by the county clerk—Pacific Western does not have a "recorded" right because Patton's partition of Lot 1901 was illegal. Thus, respondents argue:

> "It cannot be argued that the legislature intended to embrace unlawful partitions which are recorded in the deed records and fail to address access issues. No amount of statutory construction or misreading of the legislative history can overcome this simple construction."

Petitioners counter that "Lot 1903's legality" does not change the fact that Pacific Western has a recorded property right. They assert that the "issue in applying the vacation statute is not whether the tax lot is a 'legal lot of record,' but rather whether a *recorded* property interest' exists." We agree.

Again, our task is to discern the legislature's intent. *PGE,* 317 Or at 610-12. Neither "record" nor "recorded" is defined by the relevant statutes. Nonetheless, "recorded" has a precise legal meaning as used throughout statutes that relate to the creation and transfer of interests in real property. *See* ORS 93.710.[8] Moreover, ORS 205.130 expressly defines the "[r]ecording duties of county clerk[s]" who are charged with the statutory responsibility of recording and indexing documents.[9]

---

[8] ORS 93.710(1) provides, in part:

"Any instrument creating a license, easement, profit a prendre, or a leasehold interest or oil, gas or other mineral interest or estate in real property or an interest in real property created by a land sale contract, or memorandum of such instrument or contract, which is executed by the person from whom the interest is intended to pass, and acknowledged or provded in the manner provided for the acknowledgment or proof of other conveyances, *may be indexed and recorded in the records of deeds of real property* in the county where such real property is located. * * * Such recordation * * * constitutes notice to third persons of the rights of the parties under the instrument irrespective of whether the party granted such interest or estate is in possession of the real property." (Emphasis added.)

[9] ORS 205.130 provides, in part:

Under those and related statutes, a "recorded" instrument creating a property interest includes an instrument, such as the bargain and sale deed here, that has been presented to the appropriate county's clerk for recordation and that the clerk has actually recorded in the public registry and index in accordance with ORS 205.130. ORS 368.311 does not modify or otherwise qualify the term "recorded," and defendants have not identified, nor have we found, any other statutes or ordinances that either expressly or implicitly compel a different understanding here.

Pacific Western is, thus, an "owner of a recorded property right" within the meaning of ORS 368.331. The vacation of NW Sandy Drive, so as to eliminate the only existing road access to that property, would deprive Pacific Western of a right of access necessary for the exercise of its ownership rights in the property. Accordingly, the Board was required to obtain Pacific Western's consent to the vacation. Its failure to do so compels issuance of a writ of review annulling the Board's vacation order. ORS 34.040(1)(b), (d).

Finally, as noted, given its disposition, the trial court did not address petitioners' asserted entitlement to restitution. ORS 34.100. We remand for it to do so in the first instance.

Reversed and remanded with instructions to issue writ annulling Lincoln County Board of Commissioner's Order No. 6-96-200, and determining petitioners' entitlement to ancillary relief pursuant to ORS 34.100.

---

"The county clerk shall:

"(1) Have the custody of, and safely keep and preserve all files and records of deeds and mortgages of real property * * * and other interests affecting the title to real property.

"(2) Record, or cause to be recorded, in a legible and permanent manner, and keep in the office of the county clerk, all:

"(a) Deeds and mortgages of real property, powers of attorney and contracts affecting the title to real property, authorized by law to be recorded."