Argued and submitted March 18, summary judgment for defendant reversed; denial of plaintiff's motion for partial summary judgment reversed and remanded with instructions; denial of plaintiff's motion for partial summary judgment otherwise affirmed; remanded October 6, 2004

## Larry D. BROCK,
*Appellant,*

*v.*

## STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,
*Respondent.*

## 0107-07402; A120757

98 P3d 759

Francis T. Gieringer argued the cause and filed the brief for appellant.

Lisa E. Lear argued the cause for respondent. With her on the briefs were David D. VanSpeybroeck, Andrew C. Lauersdorf, and Bullivant Houser Bailey PC.

Before Haselton, Presiding Judge, and Linder, Judge, and Leeson, Judge pro tempore.

HASELTON, P. J.

### HASELTON, P. J.

Plaintiff insured appeals, challenging a summary judgment in favor of defendant insurer. Plaintiff argues that the trial court erred in its interpretation of ORS 742.013(1)(a) concerning whether a copy of plaintiff's insurance application was "indorsed upon or added to the insurance policy when issued[.]" Plaintiff further asserts that the trial court erred in denying plaintiff's cross-motion for partial summary judgment against certain defenses. Defendant raises a cross-assignment of error, arguing that, in the event we reverse on appeal, we should also conclude that the trial court erred in failing to grant defendant's request for rescission of the insurance contract. For the reasons set forth below, we conclude that the trial court erred in construing and applying ORS 742.013 and, thus, reverse and remand. Further, we conclude that defendant's "cross-assignment" is not cognizable on appeal.

On appeal from a judgment resulting from cross-motions for summary judgment, if the granting of one motion and the denial of the other are assigned as error, both are reviewable. Each moving party has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. *Eden Gate, Inc. v. D&L Excavating and Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). In regard to each motion, we view the evidence in the light most favorable to the nonmoving party.

Plaintiff alleged in his complaint claims for breach of an insurance contract, as well as other claims not at issue on appeal.[1] Plaintiff alleged that he was involved in a vehicle accident on October 23, 1998; that his vehicle was insured by defendant; that he filed a claim with defendant; and that defendant denied his claim. He alleged damages of $24,779 in his contract claim. In its answer, defendant asserted as an affirmative defense that plaintiff lacked coverage under the insurance agreement because plaintiff had made false statements in his application for insurance concerning his driving and insurance history and that defendant had relied on those

---

[1] Plaintiff stipulated to dismissal with prejudice of his other claims.

statements in issuing the policy. Defendant further alleged affirmative defenses that plaintiff's claim was barred either because (1) plaintiff had misrepresented the circumstances surrounding the loss, as well as the quality, condition, and value of his vehicle, or (2) plaintiff had made false statements in an examination under oath and refused to sign the examination under oath transcripts, in violation of his contractual obligations.

Defendant moved for summary judgment, asserting, alternatively, that the court should hold that there was no coverage as a matter of law or that the court should rescind the insurance contract.[2] In support of its motion, defendant submitted evidence that plaintiff had made misrepresentations on his application for insurance by failing to reveal that his driving privileges had been suspended and that he had had numerous traffic violations in the three years preceding the application. Defendant also submitted an affidavit that stated that, if plaintiff had accurately disclosed his history in applying for insurance, defendant's underwriting department would not have approved his application.

Plaintiff filed a cross-motion for partial summary judgment, raising a variety of arguments. Two are particularly pertinent to our analysis on appeal. *First*, plaintiff argued that, under ORS 742.013(1), defendant could not rely on misrepresentations made in the insurance application.[3] ORS 742.013(1) provides, in part:

"All statements and descriptions in any application for an insurance policy by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts and incorrect statements shall not prevent a recovery under the policy

---

[2] Defendant first asserted an entitlement to rescission in its summary judgment pleadings. Defendant's operative "Second Amended Answer and Affirmative Defense to Plaintiff's First Amended Complaint" includes no reference to rescission. Rather, that answer pleaded only that "the complaint should be dismissed with prejudice" and alleged an entitlement to "costs and disbursements, reasonable attorney fees, and any other relief that may be deemed just and reasonable."

[3] In moving for partial summary judgment and in opposing defendant's motion for summary judgment, plaintiff did not dispute that he had, in fact, made misrepresentations in the application for insurance. Accordingly, it is uncontroverted on this record that plaintiff made such misrepresentations.

unless the misrepresentations, omissions, concealments of fact and incorrect statements:

"(a) *Are contained in a written application for the insurance policy, and a copy of the application is indorsed upon or attached to the insurance policy when issued*[.]"

(Emphasis added.) Plaintiff asserted that, because no copy of his application was "indorsed upon or attached to his insurance policy when issued," defendant could not rely on any misrepresentations in his application as a basis for avoiding coverage.

*Second*, plaintiff argued that, under OAR 836-080-0235, defendant was precluded from avoiding coverage based on any misrepresentations in plaintiff's application for coverage because defendant's letter denying coverage did not refer to those alleged misrepresentations.[4] As support for that argument, plaintiff proffered a letter from defendant to plaintiff, which stated that the coverage was being denied because of plaintiff's refusal to complete the examination under oath, plaintiff's "material misrepresentations regarding the condition and history of his car," and defendant's uncertainty that the loss occurred as reported, citing the relevant policy provisions concerning each of those reasons. The letter further provided that defendant "does not waive any other defenses available to it under the law or under any conditions or limitations of the insurance contract."

The circuit court initially denied defendant's motion for summary judgment and granted in part plaintiff's motion for partial summary judgment. In particular, the court held that ORS 742.013(1)(a) precluded defendant from avoiding coverage based on plaintiff's misrepresentations in his application for insurance because "a copy of the application [was not] endorsed upon or attached to the insurance policy when issued[.]"

---

[4] OAR 836-080-0235(1) provides, in part:

"An insurer shall not deny a claim on the grounds of a specific policy provision, condition or exclusion unless the denial includes reference to the provision, condition or exclusion. A claim denial must be in writing, with either a copy or the capability of reproducing its text included in the insurer's claim file."

Immediately before trial, the trial judge—who was not the same judge who had decided the cross-motions for summary judgment—indicated that he wished to reconsider the summary judgment rulings and invited a motion for reconsideration by defendant.[5] On reconsideration, the trial judge allowed defendant's motion for summary judgment and denied plaintiff's motion for partial summary judgment.

In a letter opinion, the trial judge interpreted the requirement of ORS 742.013(1)(a) that "a copy of the application [be] indorsed upon or attached to the insurance policy when issued" to be satisfied when the application is signed by the applicant—regardless of whether the application is attached to the issued policy:

> "An applicant for insurance does not 'indorse' a 'policy'; he 'indorses' an 'application' for a policy. Also, if the clause is read so that the alternatives are to mean 'is indorsed upon the insurance policy' or 'attached to the insurance policy' they would be redundant of each other and one of them would thus be meaningless."

The court alternatively indicated that the "attached to the insurance policy when issued" criterion of ORS 742.013(1)(a) had been satisfied because the application contained a binder, that a binder is a species of "insurance policy" and, thus, that application was "attached" to an insurance policy. The court remarked that ORS 742.013 should be construed against insureds because to allow insureds who have made material misrepresentations on applications to benefit from ORS 742.013, "would frustrate the very purpose for which the legislature enacted the statute." Accordingly, the court allowed defendant's motion for summary judgment on its affirmative defenses concerning misrepresentation in the application for insurance, necessitating denial of plaintiff's

---

[5] The trial judge acted pursuant to Multnomah County Supplemental Local Rule 5.045, which states:

"(1) No Motion for Reconsideration on any pre-trial, trial or post-trial, civil or criminal matter shall be heard, reviewed, or considered by any judge sitting in the Fourth Judicial District; nor shall any such judge review a ruling rendered by any other judge except under (2).

"(2) This rule shall not apply to any statutory motion to modify, set aside, vacate, suppress or rescind; nor shall it obstruct the authority of the assigned trial judge to review any previously-filed motions."

cross-motion for partial summary judgment against the same defenses, and entered judgment for defendant.

On appeal, plaintiff asserts that the trial court erred in denying partial summary judgment in his favor and in entering judgment in favor of defendant. Plaintiff raises a battery of arguments and, particularly, reiterates his arguments as to the proper construction and application of ORS 742.013(1)(a) and OAR 836-080-0325. Defendant responds that the trial court correctly construed ORS 742.013(1)(a) and OAR 836-080-0235 and, thus, the allowance of summary judgment (and the concomitant denial of plaintiff's cross-motion for partial summary judgment) was proper. Defendant also asserts in a "cross-assignment of error" that the circuit court erred in rejecting its contention that the contract of insurance should be rescinded.

■ For clarity of analysis, to "clear the decks," we first address and reject defendant's purported cross-assignment of error. That "cross-assignment" is procedurally improper in that, given its substance, it could have been raised only by way of a cross-appeal.[6]

ORAP 5.57(2) provides:

"A cross-assignment of error is appropriate:

"(a) If, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal; and

"(b) If the relief sought by the appellant were to be granted, respondent would desire reversal or modification of an intermediate ruling of the trial court."

Defendant's cross-assignment of error does not meet the first of those criteria. The trial court granted summary judgment on the theory that plaintiff was not entitled to recover under the contract of insurance. It did not rescind the contract of insurance. By arguing that the contract should have been

---

[6] In the light of our determination that the matter is not properly before us by way of a cross-assignment of error, we need not address whether, given the posture of the pleadings in the trial court, see 195 Or App at 522 n 2, defendant sufficiently pleaded an entitlement to rescission.

rescinded, defendant here *does* "seek to * * * modify the judgment on appeal," as it seeks relief different from the relief granted by the trial court. We therefore reject defendant's cross-assignment of error as not properly before us. *Accord Samuel v. King,* 186 Or App 684, 690, 64 P3d 1206, *rev den,* 335 Or 443 (2003) (cross-appeal is necessary where a party's argument, if successful, "would yield relief different from that afforded under the trial court's judgment").

■  We turn, then, to the appeal. We begin with ORS 742.013(1)(a). That statute provides:

> "All statements and descriptions in any application for an insurance policy by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts and incorrect statements shall not prevent a recovery under the policy unless the misrepresentations, omissions, concealments of fact and incorrect statements:
>
> "(a)  Are contained in a written application for the insurance policy, and a copy of the application is indorsed upon or attached to the insurance policy when issued."

As noted, the trial court concluded that defendant could deny coverage based on plaintiff's misrepresentations in the application for either of two reasons: (1) plaintiff, by signing that application, satisfied the "indorsed upon" condition; or (2) the alternative "attached to" condition was satisfied in this case. *See* 195 Or App at 524. For the reasons that follow, we conclude that the trial court erred in both particulars.

■■  In construing a statute, we give words of common usage their plain, natural, and ordinary meaning. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993). Moreover, we do not construe statutes in a manner that is grammatically untenable. *See Pacific Western Co. v. Lincoln County,* 166 Or App 484, 491, 998 P2d 798 (2000) (statute was "susceptible to only one grammatically coherent reading"). The word "indorse" is a variant of the word "endorse." *See Webster's Third New Int'l Dictionary* 1154 (unabridged ed 1993). "Endorse" is defined as follows:

> "**a** : to write on the back of (a commercial document): as (1) : to sign one's name as payee on the back of (a check) in

order to obtain the cash or credit represented on the face (2) : to register payments of interest on (as a note or bill) by writing the amounts on the back with the signature of the one receiving the payment **b** : to inscribe (one's signature) on a check, bill, note, or other commercial document : SIGN ‹he *endorsed* his name on the check› **c** : to inscribe (as an official document) with a title, direction, memorandum, or explanation ‹mail not delivered at the original address must be *endorsed* to show the next address—*Postal Term Glossary*›; *specif* : to write an endorsement on (a letter) in military communication **d** : to make over to another (the value represented in a check, bill, or note) by inscribing one's name on the document sometimes with specific directions for transfer **e** : to acknowledge receipt of (all or part of a sum specified in a note or bill) by one's signature on the document with proper notation[.]"

*Id.* at 749.

Plaintiff contends that the proper reading of the statute is that a "copy of the application" must be "indorsed upon * * * the insurance policy when issued." That is, that material information from the application must be inscribed or otherwise reproduced on the policy itself. As support for that construction, plaintiff points not only to the dictionary definition quoted above, *i.e.*, "to inscribe (as an official document) with a * * * memorandum or explanation," but also to the statute's use of "upon"—*i.e.*, that the information must be indorsed "upon" *something*. Plaintiff posits that, given the structure of the statute, the only linguistically plausible object for "upon" is "the policy of insurance." Finally, plaintiff emphasizes that that use of "indorse upon," while perhaps seemingly archaic to modern readers, comports with well-established legal historical usage.[7]

---

[7] A number of laws, many dating from before the advent of photocopying, have provisions for something to be "indorsed" or "endorsed" on something else. *See, e.g.*, The Codes and General Laws of Oregon, ch XV, title V, § 1134 (Hill 2d ed 1892) (administrator of estate "shall indorse upon" a claim the words "examined and approved," as well as the date); General Laws of Oregon, Crim Code, ch VII, § 61, p 348 (Deady & Lane 1843-1872) ("the names of the witness [*sic*] examined before the grand jury must be inserted at the foot of the indictment, or endorsed thereon"); *id.*, Civ Code, ch 1, § 111, p 129 ("a written authority, endorsed on a certified copy of the undertaking, may empower the sheriff" to make an arrest).

The concept of insurance applications "endorsed upon" policies likewise has historical roots. *See, e.g.*, *Fenton v. Fidelity & Casualty Co.*, 36 Or 283, 56 P 1096 (1899) (policy contained provision that it "and the application for it, a copy of which

Defendant counters that "indorsed" in plain usage generally connotes the signing of a document or instrument. Thus, defendant reasons, under ORS 742.013(1)(a), an insurer can avoid coverage based on misrepresentations in a signed application.

We conclude that plaintiff's construction is correct. The word "upon" is a preposition, meaning "on," that relates one part of a sentence to another. *Webster's* at 2517. The use of the phrase "indorsed upon" clearly indicates that the indorsement is to be placed *on* something else. Thus, regardless of whether the indorsement consists merely of a signature or is rather an inscription of a memorandum, that indorsement must be "upon" *something* referred to in the sentence. Grammatically, there are only two possibilities: (1) "a *copy* of the application" (emphasis added); or (2) "the insurance policy when issued." Under the first reading (which defendant espouses), the insurer could avoid coverage based on misrepresentations in the application if a "copy of the application"—as opposed to the original application—had been "endorsed upon" (signed). Under the second reading (which plaintiff espouses), the insurer could avoid coverage based on misrepresentations in the application if the material information was reproduced on the policy itself.

As between those competing constructions, the second comports with the legislature's intent. *See Ives v. INA Life Co.*, 101 Or App 429, 790 P2d 1206, *rev den*, 310 Or 393 (1990). In *Ives*, we addressed whether, for purposes of ORS 742.013(1)(a), "a copy of the application" had been attached to the policy when issued, permitting the insurer to avoid coverage based on material misrepresentations in the application. Although our analysis focused on the "attached to" criterion, our discussion of the legislative intent is also instructive with respect to a proper construction of "indorsed upon":

> "There are two interrelated rationales for the statutory rule that an insurer cannot deny a claim based on the insured's misrepresentation if the misrepresentation is not contained in a written application and if a 'copy' of the application was

application is indorsed hereupon, taken together, with all their respective declarations, stipulations, parts, and conditions, constitute a contract of insurance").

not attached to the issued policy. The requirement that a misrepresentation be in *writing* prevents problems of proof that could arise if an insurer were permitted to deny a claim on the basis of an alleged oral misrepresentation. The requirement that 'copy' of the application be *attached* to the issued policy insures that the policyholder is provided with everything that the insurer relies on in issuing the policy, *i.e.*, the entire agreement of the parties."

*Ives*, 101 Or App at 433 (emphasis in original).

Under ORS 742.013(1)(a), "attached to" or "indorsed upon" are alternative paths to the same statutory ends—*i.e.*, an insurer can avoid coverage based on misrepresentations in an application if either is satisfied. Thus, just as the former permits such evidence in circumstances where the policyholder is "provided with everything the insurer relies on in issuing the policy," *Ives*, 101 Or App at 433, the same is true of the latter.

Defendant's construction of the "indorsed upon" criterion does not comport with that intent. Plaintiff's construction does. Under plaintiff's construction, "indorsement," like "attachment," requires the insurer, in issuing the policy, to reproduce information concurrently with the issuance of the policy so that the policyholder is fully and precisely apprised of the information "that the insurer relies on in issuing the policy." *Id.* We thus conclude that the trial court erred in holding that the "indorsed upon" condition of ORS 742.013(1)(a) was satisfied here by virtue of plaintiff's signature on the original application for insurance.[8]

■ Still, "indorsed upon" is only one of two alternative methods of satisfying ORS 742.013(1)(a)—and, as noted, the trial court also granted summary judgment for defendant on the alternative "attached to" condition. In particular, the

---

[8] We note, parenthetically, that defendant's view of the statute cannot be squared with other aspects of our analysis in *Ives*. There, notwithstanding that the insured had unquestionably signed the original policy application, *see* 101 Or App at 433, we engaged in an extended discussion as to whether a "copy" of that application was attached to the issued policy. *Id.* If signing the application were sufficient to satisfy ORS 742.013(1)(a), then our extensive discussion of the "attached to" criterion would have been gratuitous. Thus, at a minimum in *Ives*, we assumed that merely signing the application does not satisfy the "indorsed upon" condition.

court reasoned that (1) the application contained an insurance binder; (2) a binder is an "insurance policy" for purposes of ORS 742.013(1)(a); and, thus, (3) the application was "attached to the insurance policy when issued."

Plaintiff argues that the trial court's reasoning rests on two erroneous premises. First, plaintiff asserts that the application did not include a binder. Second, plaintiff asserts that, even if the application did contain a binder, a binder is not an "insurance policy" for purposes of ORS 742.013(1)(a). We do not reach plaintiff's second argument because we agree with his first.

We describe the application in some detail. It is a one-page, computer-generated document entitled "Application for State Farm Mutual Automobile Insurance Region Signature Document." It contains plaintiff's name and address, as well as information about the vehicle plaintiff sought to insure.[9] It indicates that the application date is "02/18/98" and that a policy book is to be delivered to the applicant on "02/19/98." It contains a series of questions concerning plaintiff's driving history that were answered "no." It lists plaintiff's most recent insurer, policy number, and expiration date of that insurance. It then lists various types of coverage available, with plaintiff answering "yes" to four types of coverage and "no" to five types of coverage. It indicates that the six-month premium for the types of insurance plaintiff selected is $462.45. It then has a line stating: "Apply? Discounts Available," under which are listed various types of discounts. Plaintiff responded "yes" to the "multiple line discount." The form then has a line stating: "Binder Effective Date: 02/19/98." Finally, directly above plaintiff's signature, the following paragraph appears:

> "I apply for the insurance indicated and state that (1) I have read this application, (2) my statements on this application are correct, (3) statements made on any other applications on this date for automobile insurance with this company are correct and are made part of this application, (4) I am the sole owner of the described vehicle except as otherwise stated, and (5) the limits and coverages were selected

---

[9] A different vehicle, which plaintiff added to the policy later, was the one involved in the accident underlying this case.

by me. IT IS UNDERSTOOD AND AGREED THAT NO INSURANCE IS EFFECTIVE UNDER THIS AGREE- MENT (A) UNLESS THE BINDER IS COMPLETED DES- IGNATING THE COMPANY ACCEPTING THIS APPLI- CATION AND SIGNED BY AN AUTHORIZED AGENT OF SUCH COMPANY OR (B) UNTIL THE DATE THE POLICY OR BINDER IS ISSUED BY THE COMPANY ACCEPTING THIS APPLICATION."

Defendant argued to the trial court, and reiterates on appeal, that although the qualification in subsection (A) above did not occur—that is, no binder was completed and signed by an agent designating the company as accepting the application—it can be inferred from the application itself that the qualification in (B) was satisfied because the appli- cation contained a line designating a "binder effective date" as the day following the date that the application was filled out. Thus, defendant reasons, the application itself contained the binder, and therefore "a copy of the application" was "attached to the insurance policy when issued." ORS 742.013(1)(a).

■ We conclude that the application here did not consti- tute or embody an insurance binder. A "binder" is "a contract for temporary insurance until such time as issuance of per- manent insurance is approved or disapproved or some other temporary impediment is removed." *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or 283, 289-90, 541 P2d 448 (1975); *see also Black's Law Dictionary* 161 (7th ed 1999) (defining "binder" as "[a]n insurer's memorandum giving the insured tempo- rary coverage while the application for an insurance policy is being processed or while the formal policy is being pre- pared"); ORS 742.043 (indicating that binder may be oral or in writing, and is a contract for temporary insurance).

We note that, consistently with those definitions, it is *possible* for a binder to be made part of an application for insurance. In *United Pac. Ins.*, for example:

"The binder was on an 'Application for Automobile Insurance' form listing Ernest Leon as the applicant. The coverage and limits of liability included $100,000/300,000 bodily injury liability, $50,000 property damage liability, and collision or upset for actual cash value less a $500 deductible. The application listed as the vehicles insured

> the Triway trailer and another trailer not involved in this case. Milo F. Gubrud was listed under the caption of 'Mortgagees, Additional Insured's or Certificate Holders'. The word 'Binder' was written by [insurance agent] Brooks at the bottom on the left side of the form, and the form was signed at the bottom on the right side by Don Brooks, where the signature of the applicant would normally appear. Don Brooks testified that this binder was in the form regularly used by him."

273 Or at 288. The court concluded in that case that the binder contained on the application form was an effective binder. *Id.*

The binder in *United Pac. Ins.*, in contrast to the document in this case, clearly indicated that an authorized agent of the insurer was issuing a binder to the applicant. Here, however, the application states in large print above the area the applicant is to sign that "NO INSURANCE IS EFFECTIVE UNDER THIS AGREEMENT (A) UNLESS THE BINDER IS COMPLETED DESIGNATING THE COMPANY ACCEPTING THIS APPLICATION AND SIGNED BY AN AUTHORIZED AGENT OF SUCH COMPANY OR (B) UNTIL THE DATE THE POLICY OR BINDER IS ISSUED BY THE COMPANY ACCEPTING THIS APPLICATION." Nothing in that language suggests that the application form itself is a binder. To the contrary, it indicates that it is *not* a binder, or any other type of contract for insurance, because it states that no insurance is effective based on the application until the application is accepted, as demonstrated either by the signature of an authorized agent or by the issuance of a binder "accepting this application." That language demonstrates that the application and the binder are, in fact, separate things. Nor does the reference in the application to a future "binder effective date" mean that the application itself contains a binder—it merely describes when a binder will go into effect if, in fact, the application is accepted by the insurer. That understanding is corroborated by the fact that the application also indicates that a policy book will be delivered to the applicant on the date specified as the "binder effective date," thus indicating that the insurer intended to take a further step before coverage was in force.

We thus conclude that the application for insurance here did not include a binder. Consequently, regardless of whether, in the abstract, a binder is, or can be, an "insurance policy" for purposes of ORS 742.013(1)(a), the alternative condition in the statute, "attached to" was not satisfied because there was no binder here. In sum, defendant was precluded from denying coverage based on plaintiff's misrepresentations in the application for insurance because a copy of the application was not "indorsed upon or attached to the insurance policy when issued." ORS 742.013(1)(a).

Plaintiff next asserts that the trial court also erred in denying that aspect of his motion for partial summary judgment that was based on OAR 836-080-0235(1).[10] Invoking that rule, plaintiff contends that defendant is precluded from now denying coverage based on the misrepresentations because defendant's initial written denial did not refer to those misrepresentations. To the extent that plaintiff's arguments concern misrepresentations in the insurance application, our disposition of the ORS 742.013 issue obviates any need to consider plaintiff's arguments based on OAR 836-080-0235. To the extent that plaintiff's arguments pertain to other misrepresentations on which defendant based its affirmative defenses, we reject plaintiff's arguments.

Summary judgment for defendant reversed; denial of plaintiff's motion for partial summary judgment, based on ORS 742.013(1)(a), against first and fourth affirmative defenses reversed and remanded with instructions to grant the motion; denial of plaintiff's motion for partial summary judgment otherwise affirmed; remanded.

---

[10] The relevant text of OAR 836-080-0235(1) is set out above. *See* 195 Or App at 523 n 4.